SYLVAN MORTGAGE Co., INC., Appellant, *v.* ALBERT M. STADLER, Respondent.

(Supreme Court, Appellate Term, First Department, February Term — Filed April, 1921.)

Landlord and tenant — pleading — when allegation of duress not sustained — Laws of 1920, chap. 136.

> The authority of the judicial decisions that chapter 136 of the Laws of 1920 has no application to leases made prior to April 1, 1920, has not been affected by the decision in *People ex rel. Durham Realty Corp.* v. *LaFetra,* 230 N. Y. 429. (P. 313.)

> While a two years' lease was still subsisting, the parties on March 25, 1920, entered into a new lease for a like term, to commence at the expiration of the old lease but at an increased rental.  In an action to recover the first month's rent under the new lease the answer, besides alleging that the rent demanded was unjust and unreasonable, and that the agreement under

which recovery was sought was oppressive, contained allegations to the effect that the new lease was executed under duress. *Held,* that a judgment in favor of defendant could be sustained only upon proof that he was entitled to be relieved of his obligations under the new lease because it was obtained by duress on the part of the landlord.   (P. 314.)

In the absence of proof that the landlord could not have obtained from other persons the same rental as he exacted from defendant, or that he derived any special advantage from making a contract with defendant instead of with another, he was not even bound to first give defendant an opportunity to renew his lease upon any terms.   (P. 316.)

Under the circumstances disclosed by the evidence, allegations of the answer to the effect that the new lease was executed under duress held not to have been sustained and the judgment in favor of defendant dismissing the complaint will be reversed and judgment directed for plaintiff for the amount claimed. (P. 320.)

APPEAL by the plaintiff from a judgment of the Muncipal Court of the city of New York, borough of Manhattan, fifth district, rendered after a trial without a jury, dismissing the complaint.

Herman C. Rubino (Franklyn M. Silverstein, of counsel), for respondent.

Katz & Levy (Charles Weishaupt, of counsel), for appellant.

Lewis M. Isaacs, *Amicus Curiæ,* on behalf of Apartment House Association, Inc.

LEHMAN, J.  On March 25, 1920, the parties entered into a written agreement whereby the plaintiff leased to the defendant an apartment for the term of two years beginning October first, the date of the expiration of the term granted in a previous lease to the defendant.   The rent reserved in the old lease was $1,300 per annum and under the terms of the new

lease the defendant agreed to pay a rental of $2,500. The plaintiff now brings this action to recover the first month's rent payable under the lease of March 25, 1920. The answer alleges " that the rent to recover which this action is brought is unjust and unreasonable and that the alleged agreement under which the same is sought to be recovered is oppressive " and also contains allegations which are intended to show that the lease was executed under duress.

The learned trial justice has held that the defendant cannot interpose the defense authorized by chapter 136 of the Laws of 1920, that the rent is unjust and unreasonable and that the agreement under which the same is sought to be recovered is oppressive for the agreement in this case was made prior to the time when the statute went into effect, but he has given judgment for the defendant upon the ground that the lease was procured by duress.

The courts have hitherto decided that chapter 136 of the Laws of 1920 has no retroactive application to leases made prior to the 1st day of April, 1920. *Paterno Inv. Corp.* v. *Katz,* 112 Misc. Rep. 242; affd., without opinion, 193 App. Div. 897; *78th Street & Broadway Co.* v. *Rosenbaum,* 111 Misc. Rep. 577. The recent decision of the Court of Appeals in the case of *People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429, has not affected the authority of these cases. It is true that the Court of Appeals has held that the legislature had the power to take away the remedy of the landlord to enforce an expressed or implied obligation of the tenant to surrender possession at the expiration of the term, even though in a sense the obligation of a contract is thereby impaired, but it has not intimated that the provisions of chapter 136 of the Laws of 1920 were intended to be applicable to leases made before the passage of that act, or that the

emergency conditions which the legislature has found existed would be in any wise relieved by·giving that act a retroactive application.

It follows that the judgment in favor of the defendant can be sustained only if he has proven that he is entitled to be relieved of the obligations contained in his written agreement because that agreement was obtained by duress on the part of the landlord.

The defendant's evidence shows and the trial justice has held that on March 10, 1920, the defendant was notified, together with other tenants of the landlord, that the plaintiff required possession of their respective apartments on September 30, 1920, the date of the expiration of the leases under which they held possession. The defendant was informed that the landlord was ready to give him a new lease for a term beginning on that date at a rental of $2,500. The tenant objected to paying an increase of more than ninety per cent over the existing rent but he was informed that unless he signed a new lease, the landlord would rent the apartment to another tenant. The plaintiff allowed the defendant ten days to see whether he could obtain another apartment upon terms that would be more satisfactory but the defendant was unable to find other suitable apartments and thereupon signed the lease. At that time he was in ill health and feared that the landlord would compel him to leave the premises at the expiration of his original lease. The tenant took no steps to disaffirm the lease prior to October first, but merely refused to pay the rental in advance on October first when by the terms of the lease the first month's rental became due. Even at the trial he was unwilling to accept a cancellation of the lease and to make a promise that he would leave the premises within sixty days. No evidence was presented that the rent agreed upon in the lease was

higher than the rental obtained from other tenants for similar apartments in the same neighborhood, but the plaintiff's counsel expressly conceded that there was a presumption that the rent was unreasonable and oppressive and there is evidence which shows that it was not based upon any calculation of a reasonable return upon the landlord's investment.

It would appear from the dissenting opinion in the case of *People ex rel. Durham Realty Corp.* v. *La Fetra, supra,* that the Court of Appeals was agreed that the defense of duress could not be sustained under such circumstances, but as the actual decision in that case was based upon the sufficiency of the pleadings and in any view of the case the pleadings in that case were insufficient I have preferred to consider the question anew as presented by the actual proof in this case.

In March, 1920, when the negotiations for the lease were initiated and the lease actually executed, the landlord had a legal right to inform the defendant that unless he signed a new lease at an increased rental he would rent the premises to a new tenant at the expiration of this tenant's lease. The threat express or implied that the landlord would exercise his lawful right to regain possession of the premises at the expiration of the term then in force, constitutes no duress, for duress can never be predicated upon a threat to enforce legal rights by lawful means. *McPherson* v. *Cox,* 86 N. Y. 472; *Dunham* v. *Griswold,* 100 id. 224. The learned trial justice recognized the authority of these decisions, but held that the duress in this case was not predicated upon the threat of the landlord to enforce his legal right to compel the tenant to surrender the apartment at the expiration of his existing term, but was based upon the helpless condition of the defendant in view of extraordinary condi-

tions which prevented him from obtaining any apartment at a reasonable rate and the unconscionable conduct of the landlord in taking advantage of this condition to extort a lease which was actually oppressive. A court of equity will undoubtedly under proper circumstances relieve a party from a contract which has been extorted from him by unfair means and it is impossible to lay down any general rule as to the circumstances under which a court of equity will act which will apply to all cases. Before a court of equity, however, has any right to act, it must appear that the party seeking the relief did not wish to enter into such a contract but was in effect compelled to do so by some peculiar condition of hardship. In the present case the tenant did wish to enter into an agreement which he has made and the landlord did not compel him to do so. The tenant was well aware of the fact that owing to various economic causes there was a dearth of housing accommodations in the city of New York. He was at that time in possession of an apartment, but the law as it existed then did not recognize any prior right on his part to continue in that possession after the expiration of his lease. The landlord had the legal right to rent the apartment to another person at the expiration of the defendant's term. There is no proof, and it cannot be inferred, that the landlord could not have obtained from other persons the same rental as he exacted from this defendant or that he derived any special advantage from making a contract with this defendant instead of with some other willing person. Under these circumstances he was not even bound to give this defendant the first opportunity to renew his lease upon any terms. The defendant's necessities were no greater than those of thousands of other persons in this city. He was afraid that he might not find suitable accommodations unless he

renewed his lease and to renew the lease he entered into an agreement from which he now seeks to be relieved.  By his contract he obtained from the landlord exactly what he desired to obtain and secured for himself an advantage over other tenants in the city of New York.  If the legislature had not subsequently enacted legislation which gave to all tenants in possession a right to continue that possession which they had not previously enjoyed, the defendant would never have sought to be relieved from his obligation or claimed that the agreement was obtained by duress. Even after the legislature made provision which at that time it considered adequate to relieve the conditions prevailing in the city of New York and which under certain circumstances gave the right to a tenant to remain in possession for a limited time after the expiration of his legal term, this defendant still did not make any attempt to disaffirm his agreement or to relinquish the advantages which he derived therefrom. Only after the legislature had passed the September rent laws which suspended the remedy of the landlord to regain possession of leased premises after the expiration of the term for which they were leased and thereby rendered the advantage over other tenants which this defendant had obtained by agreement of little value, did he repudiate his obligation.  A court of equity will not relieve a promisor from his agreement merely because of changed circumstances which rendered the consideration received for the promise of less value.

I am unable to see how under these circumstances the claim of duress can be sustained.  The landlord had the right to confer upon any party he desired a promise of possession of the premises at the expiration of the defendant's term.  The law of supply and demand created a condition where the landlord could

obtain for his promise of possession an unusually high consideration and he chose to demand in return for his promise the largest consideration which he could legally obtain. The tenant desired to obtain from the landlord the right to continue possession and in order to obtain this right he paid the unusually high consideration demanded. If the legislature had not thereafter enacted the rent laws it is possible that the landlord could on October first have obtained a far higher rental from another tenant and in that event this defendant would unquestionably have insisted upon his bargain. He speculated and speculated perhaps unsuccessfully upon the comparative advantage or disadvantage of making an agreement in advance for continued possession of a suitable apartment. The legislature has determined that the landlord's liberty to contract with whom he pleased and upon whatever consideration he could obtain, should be restricted to promote the public welfare because in the emergency which the legislature has found now exists, competition does not act as a sufficient corrective against demands for inordinately high rentals for living quarters in the city of New York but even though the court might find that the same unusual conditions existed at the time this contract was made as at the time that the legislature acted and that the remedy provided by the legislature for these conditions in September was economically sound and even that the legislature should have provided such remedies sooner, yet the court cannot without assuming a portion of the legislative police power, relieve this defendant from the obligation of a contract which was lawful when made and which gave to the defendant a right he desired to obtain, merely because the defendant, acting under a fear shared by thousands of other tenants, that unless he secured a right of future possession of a suitable

apartment, he might thereafter be entirely unable to obtain such an apartment or unable to obtain it except at a prohibitive rate, agreed to pay a rent which, though higher than is necessary to afford the landlord a fair return on his investment, and higher than the landlord could obtain under normal conditions, is probably no higher than the landlord might have obtained from other persons at that time and certainly no higher than the defendant was willing to pay as long as the general fear continued in order to secure the advantage obtained from the contract. The legislature has exercised its power to relieve generally tenants in possession from the fear that they might not be able to continue in possession, unless they agreed to pay the rent demanded, by conferring upon them a right of continued possession upon terms it deemed proper, regardless of the desire of the landlord, but though a court of equity has power to adjust its remedies to meet new conditions when a wrong has been committed, its power is based upon the existence of a wrong which requires a remedy and it cannot relieve a party against the obligation of a contract, lawful when made, when such party entered into the contract knowingly and desired to retain the benefit derived from such contract until the legislature more than six months thereafter, in the exercise of its police power, conferred upon tenants in general a right to continue in possession upon terms more favorable than those which the landlord had a legal right to exact for his promise to give the tenant a right of continued possession. The only possible claim of compulsion on the part of the tenant was the fear that competitive conditions which might exist on October first would render it impossible for him to obtain a right of possession of a suitable apartment on that date; the purpose and the effect of the agreement was to give the tenant

security of possession after October first. He sought, and for six months retained, an advantage over other tenants, actual or prospective, who had not made such an agreement and who therefore, on October first, might be competitors for the right to occupy apartments vacant on that date, and in its final analysis, the defendant's claim for relief is based upon the proposition that in spite of the fact that he was willing to enter into this contract in order to relieve himself from the fear that competitive conditions existing on October first would place him in a more unfavorable position and compel him to pay a larger consideration for an apartment if he had not secured one before that date, yet he should not be held to his obligation because the legislature four days before October first enacted statutes which protected other tenants against the effect of competitive conditions to which they would otherwise have been subjected.

Judgment should, therefore, be reversed, with thirty dollars costs and judgment directed for the plaintiff for the amount demanded in the complaint.

MULLAN and BURR, JJ., concur.

Judgment reversed, with thirty dollars costs.