**BROWN, Administrator, Office of Price Administration, v. WARNER HOLDING CO.**

**No. 884.**

District Court, D. Minnesota,
Fourth Division.

June 19, 1943.

594

R. H. Fryberger and M. R. Keith, both of Minneapolis, Minn., for defendant.

R. M. McCareins, of Minneapolis, Minn., and David Ginsburg, Gen. Counsel, and Thomas I. Emerson, Asst. Gen. Counsel, both of Washington, D. C., Alex Elson, Regional Atty., and John F. Manierre, Regional Enforcement Atty., both of Chicago, Ill., Nobel Shadduck, Dist. Counsel Twin Cities Dist. Office, and R. M. McCareins, Chief Atty., Minneapolis-St. Paul Defense-Rental Area, both of Minneapolis, Minn., and George J. Burke, of Washington, D. C., and Arthur Magid, of Chicago, Ill., for plaintiff.

JOYCE, District Judge.

On March 5th and 6th, 1943, hearing was had before the undersigned judge of this court on plaintiff's motion for a preliminary injunction and defendant's demurrer to the complaint herein. Mr. R. M. McCareins appeared in behalf of the plaintiff and Mr. R. H. Fryberger and Mr. M. R. Keith appeared in behalf of the defendant. Argument was heard and briefs were thereafter filed.

The complaint in this proceeding alleges that the defendant has demanded and received rents from the tenants occupying its apartments in the City of Minneapolis, Minnesota, in amounts which are in excess of the maximums permitted therefor under maximum rent regulations No. 53 (7 Fed. Reg. 8596), effective November 1, 1942, issued by the Administrator pursuant to

Section 4 of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 904. The relief sought is founded on Section 205(a) of the act, 50 U.S.C.A.Appendix, § 925(a), and plaintiff seeks to enjoin the defendant from continued violations of said maximum rent regulation No. 53.

The defendant has interposed a demurrer asserting the unconstitutionality of the act and its repugnancy to numerous provisions of the Constitution of the United States. Specifically, and among other things the defendant claims: (1) that the act exceeds the powers granted to Congress under the war power clause of the Constitution; (2) that the act denies the defendant due process and permits of its property being taken without just compensation; (3) that Congress has indulged in the giving of an unlawful, unwarranted and unauthorized delegation of power to the administrator; (4) that the powers delegated are unaccompanied by sufficient or reasonable standards to govern the administrator's actions; (5) that the administrator is permitted to make and enact laws by regulation and order without sufficient controls or limitations surrounding his activities; (6) that the defendant is afforded no protection against arbitrary and capricious regulations of the administrator. Particularly, violations are claimed of Article I, section 1 and of Article I, Section 8, and the IVth, Vth, and VIth "Articles in addition to, and amendments of the Constitution of the United States of America."

The Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., is a "statute born of the exigencies of war". Scripps-Howard Radio, Inc., v. Federal Communications Commission, 316 U.S. 4, 62 S.Ct. 875, 883, 86 L.Ed. 1229. Its constitutional basis is found in Article I, section 8 of the Constitution, which reads in part as follows:

"The Congress shall have Power To lay and collect Taxes, * * * to pay the Debts and provide for the common Defence and general Welfare of the United States; * * *

"To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

"To raise and support Armies, * * *;

"To provide and maintain a Navy;

"To make Rules for the Government and Regulation of the land and naval Forces;

"To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions; * * *

"To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, * * *."

The act was passed on Jan. 30, 1942, Congress expressly finding that it was "necessary to the effective prosecution of the present war". A reading of Section 1 (a) will impress one with the earnestness and acute appreciation with which the lawmaking body approached the performance of its functions with reference to the national defense and the public interest.

■■ Equitably administered, it would seem that rent control in war time is both a necessary and proper function of Government in its attempt to avoid the dangers of inflation. Not only the lives of its citizens may be directed but their complete resources as well may be utilized by the Government in its effort to survive when beset with dangers to its existence. In Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 426, 54 S.Ct. 231, 235, 78 L.Ed. 413, 88 A.L.R. 1481, the Supreme Court said:

" * * * Thus, the war power of the federal government is not created by the emergency of war, but it is a power given to meet that emergency. It is a power to wage war successfully, and thus it permits the harnessing of the entire energies of the people in a supreme co-operative effort to preserve the nation."

War is realistic and permits of no illusions. The marshalling of national assets presents many problems in reality and the Supreme Court has long recognized the power of the national government in the performance of its obligations directed toward the common good and the national defense. The court's views have covered a wide range, as witness the powers to take over and operate railroads, Northern Pacific Ry. Co. v. North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897; to take over and operate telephone and telegraph systems, Dakota Central Telephone Co. v. South Dakota, 250 U.S. 163, 39 S.Ct. 507, 63 L.Ed. 910, 4 A.L.R. 1623; to place compulsory orders of materials required for national defense, Moore & Tierney, Inc. v. Roxford Knitting Co., 2 Cir., 265 F. 177 (certiorari denied 253 U.S. 498, 40 S.Ct. 588, 64 L.Ed. 1032); to draft manpower

for service in the armed forces, Selective Draft Cases (Arver v. United States), 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A. 1918C, 361, Ann.Cas.1918B, 856; to prohibit the manufacture or sale of alcoholic beverages, Hamilton v. Kentucky Distilleries, 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194, also Jacob Ruppert v. Caffey, 251 U. S. 264, 40 S.Ct. 141, 64 L.Ed. 260; to regulate prices of certain commodities, Highland v. Russell Car & Snow Plow Co., 279 U.S. 253, 49 S.Ct. 314, 73 L.Ed. 688; to control rents, Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165.

In Stewart v. Kahn, 11 Wall. 493, 506, 20 L.Ed. 176, the Supreme Court said: "Congress is authorized to make all laws necessary and proper to carry into effect the granted powers. The measures to be taken in carrying on war and to suppress insurrection are not defined. The decision of all such questions rests wholly in the discretion of those to whom the substantial powers involved are confided by the Constitution."

■ My conclusion is that the act does not exceed the power granted to Congress under the war powers clause of the Constitution for, as was stated in Henderson v. Kimmel, D.C., 47 F.Supp. 635, 642, "It must follow that Congress has the power to regulate the costs of commodities and facilities in order to insure the essential armaments, prevent defeat, and insure the victory."

Does the Act violate the due process clause of the Fifth Amendment?

By Section 2(b) of the act, the administrator is authorized to establish such maximum rents as in his judgment will be fair and equitable, whenever a rise in defense-area rents is threatened, in order to effectuate the purposes of the act.

Section 2(c) provides that any regulation or order may be established in such form or manner, may contain such classifications and differentiations, and may provide for such adjustments and reasonable exceptions as in the judgment of the administrator are necessary or proper in order to effectuate the purposes of the act.

By Section 2(d) the administrator is given authority to regulate or prohibit speculative or manipulative practices which may result in rent increases.

■ The exercise of the foregoing power delegated to the administrator necessarily flows from the disclosed purposes of Section 1(a), namely, to prevent inflationary increases in prices. If the act is an appropriate means to a permitted end there is little scope for the operation of the due process clause. Virginian Railway Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Henderson v. Kimmel, D.C., 47 F.Supp. 635. In Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 516, 78 L.Ed. 940, 89 A.L.R. 1469, the Supreme Court in connection with a state law controlling the sale of milk, said:

"The Constitution does not secure to any one liberty to conduct his business in such fashion as to inflict injury upon the public at large, or upon any substantial group of the people. Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the Legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty."

■ The restraint upon one charging as high a price as is obtainable during war time does not constitute taking. Nor does the failure of the act to guarantee a fixed return mean confiscation. All property rights are held subject to appropriate legislative regulation and if there is a loss resulting it is consequential. Knox v. Lee (Legal Tender Cases), 12 Wall. 457, 20 L. Ed. 287. For application of the foregoing principle to rent control see Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165. The Fifth Amendment is not a guaranty of untrammeled freedom of action and of contract. Virginian Railway Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

■ Opportunity for judicial review to one aggrieved is provided under Sections 204(c) and (d) of the act. The act creates a so-called Emergency Court of Appeals which "shall have the powers of a district court with respect to the jurisdiction conferred on it by this Act", and its judgments in turn are to receive expedited disposition in the Supreme Court of the United States. With provisions for notice, and opportunity for hearing and for appeal, I do not believe that there is inconsistency with the due process clause of the Fifth Amendment.

■ In support of its contention that the standards of the statute are not sufficiently

specific and definite to make clear to a defendant when the regulations are read whether or not he is engaged in violating the law, defendant compares the act to the Lever Act, 40 Stat. 276, held unconstitutional in United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 299, 65 L.Ed. 516, 14 A.L.R. 1045. The Cohen case held invalid Section 4 of the Lever Act making it unlawful to "exact excessive prices for any necessaries" and to make any "unjust or unreasonable rate or charge." The quoted phrases were neither defined in the act nor made definite by any regulation setting prices or charges. As a consequence there could be as many opinions as to what rates or charges were unjust or unreasonable as there were views concerning the matter. It may be assumed that Congress knew of the Supreme Court decision in the Cohen case when it passed the Emergency Price Control Act. There is no such vagueness or looseness of terms with reference to the fixing of maximum rents and one who reads the regulation will know what he can or cannot do under the law.

▪ Further, I do not think the act creates an unlawful delegation of power. United States v. C. Thomas Stores, Inc., D.C., 49 F.Supp. 111 (opinion by Judge Nordbye of this court); United States v. Hark, D.C., 49 F.Supp. 95; United States v. Slobodkin, D.C., 48 F.Supp. 913; United States v. Friedman, U.S.D.C.Conn., March 25, 1943, 50 F.Supp. 584; Henderson v. Kimmel, D.C., 47 F.Supp. 635; United States v. Sosnowitz & Lotstein, Inc., U.S. D.C.Conn., March 25, 1943, 50 F.Supp. 586; Brown v. Wick & Campbell, D.C.E. D.Mich., 48 F.Supp. 887, and Pratt v. Hollenbeck, Court of Common Pleas, Erie Co. Pa., decided April 22, 1943.

▪ Constitutional requirements are met when Congress clearly sets forth the policy and establishes the standards for its application under varying conditions. It may then delegate to an administrative agency the power to determine the details essential to carry out the legislative purpose. The terms whereby power has been delegated by Congress in the instant act, in their definiteness and certainty are not unlike those which have often been sustained by the Supreme Court as proper standards for administrative action. See Opp Cotton Mills v. Administrator, 312 U.

S. 126, 657, 61 S.Ct. 524, 85 L.Ed. 624 (Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.); Pittsburgh Plate Glass Co. v. National Labor Relations Board (National Labor Relations Act, 29 U.S.C.A. § 151 et seq.), 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; Currin v. Wallace, 306 U. S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (Tobacco Inspection Act of 1935, 7 U.S.C.A. § 511 et seq.); Mulford v. Smith (Tobacco Marketing Quota Provisions of the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1311 et seq.), 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (Bituminous Coal Act of 1937, 15 U. S.C.A. § 828 et seq.); Avent v. United States, 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202 (Transportation Act of 1920, 49 U.S.C. A. § 71 et seq.). In United States v. Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 1013, 83 L.Ed. 1446, the court said:

"From the earliest days the Congress has been compelled to leave to the administrative officers of the Government authority to determine facts which were to put legislation into effect and the details of regulations which would implement the more general enactments. It is well settled, therefore, that it is no argument against the constitutionality of an act to say that it delegates broad powers to executives to determine the details of any legislative scheme. This necessary authority has never been denied. In dealing with legislation involving questions of economic adjustment, each enactment must be considered to determine whether it states the purpose which the Congress seeks to accomplish and the standards by which that purpose is to be worked out with sufficient exactness to enable those affected to understand these limits. Within these tests the Congress needs specify only so far as is reasonably practicable."

The Emergency Price Control Act sets up certain standards for the Administrator's action both before issuing a rent regulation and in the issuing thereof. Before issuing the Administrator must issue a declaration establishing an area as a defense rental area; setting forth the necessity for the establishment of such area within the statutory definition of that term; setting forth recommendations with reference to the stabilization or reduction of rents for housing accommodations within such area; giving consideration, to the extent he deems

598

practicable, to the recommendations made by state and local officials in connection with such designation. He must defer the issuance of the regulation for at least 60 days after the issuance of the declaration, and he must ascertain that rents have not been stabilized in accordance with the recommendations made. In issuing the rent regulation the Administrator must give due consideration to any recommendations which have been made by state or local officials concerned with housing or rental conditions in the area. He is required to ascertain and give due consideration to the rents prevailing on or about dates set forth in the act. He must make adjustments for the relevant factors of general applicability, including property taxes and other costs. He must establish such maximum rents as will be generally fair and reasonable. He must establish such maximum rents as will effectuate the purposes of the act.

The provisions of the act for protest, hearing and review are an answer to the claim that the powers granted permit the exercise of arbitrary action by the Administrator. The Supreme Court in sustaining the Tobacco Marketing Quota Provisions of the Agricultural Adjustment Act of 1938 said: "The Congress has indicated in detail the considerations which are to be held in view in making these adjustments, and, in order to protect against arbitrary action, has afforded both administrative and judicial review to correct errors. This is not to confer unrestrained arbitrary power on an executive officer. In this aspect the Act is valid within the decisions of this court respecting delegation to administrative officers." Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 653, 83 L.Ed. 1092.

■■■ It is to be noted that this memorandum deals only with the major issues raised by the defendant's demurrer. On these phases of the demurrer I am of the view that the defendant's position is not tenable, and being mindful of the admonition of the Supreme Court in the Legal Tender Cases (Knox v. Lee), 12 Wall. 457, 531, 20 L.Ed. 287, that "an act of the legislature is not to be declared void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt", I hold that the Emergency Price Control Act is constitutional and that the defendant's demurrer should be and is overruled.

Plaintiff's motion for a preliminary injunction is granted and the defendant is accorded an exception.