RUTH KUPERSCHMID et al., Respondents, v. GLOBE BRIEF CASE CORPORATION, Appellant.

RUTH KUPERSCHMID et al., Respondents, v. ROBERT ELECTRICAL CORP., Appellant.

EAST RIVER HOLDING CORP., Respondent, v. MAX DRASCHNER, Appellant.

EAST RIVER HOLDING CORP., Respondent, v. SAMUEL DRESSLER et al., Appellants.

Supreme Court, Appellate Term, First Department, September 11, 1945.

*Milton H. Goldstricker* and *Herbert L. Kanner* for Globe Brief Case Corporation, appellant.

*Albert A. Klein* and *Emanual Davis* for Robert Electrical Corp., appellant.

*Solomon Ferziger* for Max Draschner, appellant.

*Benjamin E. Fernbach* and *Frederick Chambers* for Samuel Dressler and another, appellants.

*Nathaniel L. Goldstein*, Attorney-General (*Orrin G. Judd, William F. McNulty, Saul A. Shames, Abe Wagman* and *Herbert A. Einhorn* of counsel), appearing under section 68 of the Executive Law.

*Charles Gottlieb, Alexander S. Natanson* and *Marvin L. Lothstein* for respondents.

*Edwin W. Cooney* and *Pauline Taylor* for City Bank Farmers Trust Company, *amicus curiæ*.

*Martin S. House* and *Adolph S. Ziegler* for Mid-Manhattan Management Corp., *amicus curiæ*.

HAMMER, J. The respective defendants-appellants occupied commercial spaces as tenants under four different leases. Prior to the enactment of the Commercial Rent Law (L. 1945, ch. 3) and before the expiration of their leases, the tenants executed new leases, two for a term of one year and the others for a term of two years; one to commence on January 1, 1945, the others on February 1, 1945. The new leases were at an increased rental of more than 15% above the amount of rental charged the respective tenants on March 1, 1943. Actions were instituted by their respective landlords to recover several monthly installments of rent falling due under the four different leases. The tenants relying on section 7 of chapter 3 of the Laws of 1945, as amended by chapter 315, and having tendered the emergency rent prescribed by the terms of the act, asserted as a defense

that under the section the rents charged under the new leases were unjust and unreasonable. Judgment was rendered in favor of the landlords, the court holding that section 7 of the Act did not apply to the leases in question for if applied it must be held to be unconstitutional.

Before entering upon a discussion of the principles of law involved on this appeal it should be observed that the constitutionality of chapter 3 of the Laws of 1945, as amended by chapter 315 of the Laws of 1945, has been recently upheld by the Court of Appeals (*Twentieth Century Associates* v. *Waldman*, 294 N. Y. 571), as previously it had been upheld by the Appellate Division of this court (*Matter of Cohen* v. *Starke*, 269 App. Div. 256), and also by decisions in the trial courts (*Twentieth Century Associates* v. *Waldman*, 184 Misc. 24, affd. 294 N. Y. 571, *supra; Rosen* v. *370 West 35th St. Corp.*, 184 Misc. 172; *Sissias* v. *Perlmutter*, 184 Misc. 174).

On this appeal the tenants-appellants seek the review of the decision below, both as to the construction and constitutionality of section 7 of chapter 3 of the Laws of 1945, as amended by chapter 315. Section 7, which the court below held inapplicable to leases executed prior to the effective date of the act, or if applicable, unconstitutional, provides: " In any action to recover rent for commercial space accruing during the period of the emergency, it shall be a defense that such rent is unjust, unreasonable and oppressive if such rent is in excess of the emergency rent or any rent which may be fixed pursuant to section four of this act, and to the extent of such excess the same shall be uncollectible. The tenant may interpose the defense that the rental value of the commercial space has been reduced by reason of an unreasonable diminution of services, and to the extent that the court shall find that such services have been so diminished, the value thereof shall be allowed in reduction of the rent charged and shall be uncollectible; or, in the alternative, the tenant shall be entitled to a cause of action to recover a proportionate amount of the rent paid."

While on the issue of construction to determine the applicability of section 7, we agree that it is of prime importance to analyze the act to ascertain the intention of the Legislature in enacting the statute, we do not think applicability would render the act unconstitutional. We would be inclined to reverse without opinion upon the authority of the decisions cited above, especially that of the Court of Appeals in *Twentieth Century Associates* v. *Waldman* (294 N. Y. 571, *supra*), which is controlling here, except that we are reversing the lower court in

which the thorough and learned opinion relied heavily on *Orinoco Realty Co.* v. *Bandler* (233 N. Y. 24), which also is relied upon by the dissenting opinion in the *Twentieth Century Associates* v. *Waldman* case (*supra*). We, accordingly, feel that we should publish this opinion, written but held for consideration of that decision pending in the Court of Appeals, references to which have been interpolated herein.

In seeking the legislative intent we find that the facts which were before the Legislature and motivated that body in its enactment are revealing and helpful. The report of the committee sponsoring the legislation must be accepted as a reliable and accepted source of information (*Woolcott* v. *Shubert*, 217 N. Y. 212; *Matter of Hamlin*, 226 N. Y. 407; *Lightbody* v. *Russell*, 293 N. Y. 492).

The committee reported (N. Y. Legis. Doc., 1945, No. 2) that a "public emergency existed on March 1, 1943, and still exists because of the exaction and attempted exaction by landlords of unjust, unreasonable and oppressive agreements for the payment of rent with regard to certain types of commercial real property" and that, "As between landlords and tenants in this situation, freedom of contract has become an illusory concept" (p. 11). The committee stated in conclusion: "Moreover, no tenant who has already signed a lease will be disadvantaged, for any corrective legislation adopted will immediately lower his rent to a reasonable statutory level" (p. 20), and recommended that remedial legislation of an emergency character be enacted at the 1945 session of the Legislature, embodying a declaration of public emergency and specifying that for the duration of the emergency any rent exceeding by more than 15% the rent paid on March 1, 1943, should deemed unjust, unreasonable and oppressive and should be uncollectible as to such excess and that no landlord who should bring any action for rent or rental value should be permitted to recover such excess (pp. 19, 20).

From the facts presented to it, the Legislature was in duty required to take notice of the changing economic situation arising from conditions brought about by the war and to give due consideration to the enactment of appropriate legislation and accordingly enacted chapter 3 of the Laws of 1945, for the purposes recited, to be effective during the period of the emergency. It thus becomes apparent that the legislative actions in ascertaining the facts, considering the harm being done to the public welfare and the evil to be corrected, determining the remedy required and providing same by law, were not arbitrary

or capricious but on the contrary the performance of necessary legislative constitutional functions which, expressed in a statute, are binding and conclusive upon this court (*Old Dearborn Co. v. Seagram Corp.,* 299 U. S. 183; *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583; *Carolene Products Co.* v. *U. S.,* 323 U. S. 18; *Nebbia* v. *New York,* 291 U. S. 502; *Chamberlain, Inc.,* v. *Andrews,* 271 N. Y. 1, affd. 299 U. S. 515; *People* v. *Arlen Service Stations,* 284 N. Y. 340; *Matter of Stubbe* v. *Adamson,* 220 N. Y. 459; *People ex rel. Rayland Realty Co., Inc.,* v. *Fagan,* 194 App. Div. 185, affd. 230 N. Y. 653). That being so, the courts have the obligation of ascertaining the express or clearly indicated legislative intent and to determine whether the statute or the section or part attacked violates constitutional provisions as asserted.

While performing this judicial function it is necessary that the act be read (L. 1945, ch. 3, as amd. by ch. 315) as an entirety to determine whether it accomplishes the purpose for which it was intended (*Alberene Stone Co.* v. *Bd. of Education, City of N. Y.,* 153 Misc. 812, affd. 244 App. Div. 711; *Goldstein* v. *State of New York,* 281 N. Y. 396; *People* v. *Long Island R. R. Co.,* 194 N. Y. 130), and that there be taken into consideration the situation which the statute was designed to correct (*Wiley* v. *Solvay Process Co.,* 215 N. Y. 584). Courts are required to seek the intent from the language used or if there be ambiguity, obscurity or doubt, to give that construction which furthers the object, spirit and purpose of the statute (*People* v. *Kaye,* 212 N. Y. 407; *Tompkins* v. *Hunter,* 149 N. Y. 117). Following that procedure we find the intent of this act to be that all " rents are frozen and stabilized as of the effective date hereof " (L. 1945, ch. 3, § 11). The language of section 7 clearly expresses the legislative intent by language making it applicable to " any action to recover rent for commercial space accruing during the period of emergency ". The statute also contains an unmistakable statement of the legislative purpose in section 1, as follows: " This act is declared to be a measure designed to protect and promote the public health, safety and general welfare, to aid the successful prosecution of the war, and essential civilian activities, and to prevent inflation, and is made necessary by an existing public emergency."

As a result of the last war, there was a housing shortage and the remedy provided in 1920 by the Legislature was an emergency control act (L. 1920, ch. 136) to prevent the anticipated congestion by the control of occupancy and limitation of rents to such as were provable in court to be fair and reasonable. But the experience of the last war taught us the bitter lesson

that inflation is the real evil to be prevented. Inflation is known to be an octopus of economic evil. Through the common effort of greedy seekers of excessive, uncontrolled profits, inflation attains the power of an organized force which tentacle-like is spread out in many directions with far-reaching capacity for harm. Simulating the appearance of legitimate businesses economically controlled or governed by fair standards, war profiteering grasps all within reach and crushes those who fall prey to hidden greed. The effective safeguard is vigilant legislative regulation and control of all excessive profits leading to inflation. During every period of war, emergency statutes, recognized as valid, have been enacted for the regulation and control of persons, relationships, and property, including in many instances production and distribution, which would be clearly unlawful in times of peace. In this period of our Second World War our Congress recognized the dire consequences of inflation and among other statutes enacted the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*). It directed the Price Administrator to stabilize living costs, including housing rent which is the second largest item in the cost of living, and provided for Federal rent control for all rental housing in defense areas. The Price Administrator selected a maximum rent date for rent control areas and directed that rents must not exceed those in effect on that date. The date selected by the Price Administrator as a base date for rent control in a particular defense area is the maximum rent date and the rent then payable is the highest rent a landlord may legally charge a tenant within that area. Under the Rent Regulations for Housing, regardless of any contract or agreement whether made before or after the effective date of the regulation, the landlord unless coming within prescribed exceptions can neither charge more than the established maximum rent, nor obtain possession of the rented premises. The Emergency Price Control Act and the Office of Price Administration regulations thereunder apply to existing contracts and leases (*Taylor* v. *Brown,* 137 F. 2d 654, certiorari denied 320 U. S. 787; *Philadelphia Coke Co.* v. *Bowles,* 139 F. 2d 349; *Brown* v. *Winter,* 50 F. Supp. 804). That they are constitutional has been decided finally and is no longer open to question (*Taylor* v. *United States,* 142 F. 2d 808, certiorari denied 323 U. S. 723; *Wilson* v. *Brown,* 137 F. 2d 348; *Chatlos* v. *Brown,* 136 F. 2d 490; *Brown* v. *Warner Holding Co.,* 50 F. Supp. 593). Freezing of occupancy, the method adopted under the 1920 Emergency Rent Act, providing that the reasonableness of rents could only be challenged

in a private suit between landlords and tenants (L. 1920, ch. 136, as amd. by L. 1920, ch. 944), presented many difficulties of administration and was not followed by the Federal Emergency Price Control Act of 1942, which instead froze rents, thereby giving a statutory " basis for controlling exorbitant rents willingly paid by tenants " (*Wilson* v. *Brown,* 137 F. 2d 348, *supra*). In enacting the 1945 Commercial Rent Law the Legislature had the benefit of observing and considering the workings of the 1920 act and the presently existing Federal rent controls.

It is clear the New York Legislature did not adopt the outmoded remedy of the 1920 New York statute, but followed the improved pattern of the Federal Emergency Price Control Act of 1942. The New York Act of 1945 contains the provision referred to above that " Rents are frozen and stabilized as of the effective date hereof in the manner provided herein " (L. 1945, ch. 3, § 11). Unlike the 1920 act, which had as its objective the control of an anticipated housing congestion, the 1945 act has as one of its primary purposes the anticipation and prevention of inflation. This was reasonably regarded as likely not only because of facts of common knowledge and expressions in Federal and State statutes, but particularly because of the existing and continued exactions of unjust increases in commercial rents during the declared emergency. Unchecked similar greed might also be expected to spread to all uncontrolled prices and possibly circumvent those already fixed. The condition sought to be remedied by the 1920 act was solely anticipatory in character, as was recognized in *Orinoco Realty Co.* v. *Bandler* (233 N. Y. 24, 30), wherein it was stated: " We think it is not too much to assume that leases executed before the laws took effect extending beyond the dangerous period were of negligible importance " and, therefore, the decisions (*Orinoco Realty Co.* v. *Bandler,* 197 App. Div. 693, affd. 233 N. Y. 24, *supra; Sylvan Mortgage Co., Inc.,* v. *Stadler,* 115 Misc. 311, affd. 199 App. Div. 965; *Paterno Investing Corp.* v. *Katz,* 112 Misc. 242, affd. 193 App. Div. 897; *78th Street & Broadway Co.* v. *Rosenbaum,* 111 Misc. 577), cited by the court below as interpretive of the 1920 rent act in terms of legislative intent, held that the act was prospective in its effect and not retroactive. However, pending the enactment of the 1945 act, it was a matter of common knowledge and judicial notice (*734 Fifth Avenue Corp.* v. *Kent-Costikyan, Inc.,* 184 Misc. 12) that dangerous and oppressive conditions existed in the commercial rent field. The act in review was directed at the serious conditions which not only had arisen,

but for the welfare of the people corrective measures were " translated into law in order to remedy the emergent conditions which " the committee of the Legislature " found to exist in respect to rentals being demanded for manufacturing and wholesale store space in the City of New York." (N. Y. Legis. Doc., 1945, No. 31.)

It is clear that this statute and other statutes, both Federal and State were parts of a comprehensive scheme of legislation remedial of inflation in which this statute acted through the medium of controlled agreements for commercial rents, no matter when made. It was in part retroactive in that rents were frozen as of a date prior to the effective date of the statute. But the real evil which the enactment remedied by preventing collection of rents beyond the amounts fixed as of the freeze date was that of inflation. In this respect the statute was prospective.

Where it is necessary to carry out the true intent of the Legislature, statutes have been held applicable to rights arising under prior transactions (*Matter of Eagan* v. *Livoti,* 287 N. Y. 464; *Wilcox* v. *Mutual Life Ins. Co.,* 235 N. Y. 590), and the 1945 act falls within such category (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571, *supra; Matter of Cohen* v. *Starke,* 269 App. Div. 256, *supra*). Every contract is impliedly subject to the paramount and reserved authority of the State to safeguard the vital interests of its people (*People* v. *Perretta,* 253 N. Y. 305) and this extends to economic needs as well (*Veix* v. *Sixth Ward Assn.,* 310 U. S. 32; *Atl. & Pac. Tea Co.* v. *Grosjean,* 301 U. S. 412; *Chamberlain, Inc.,* v. *Andrews,* 271 N. Y. 1, affd. 299 U. S. 515, *supra; East New York Sav. Bank* v. *Hahn,* 293 N. Y. 622 ).

It is a well-established and fundamental principle of constitutional law that a proper exercise of police power is not rendered invalid by reason of modification or impairment of contracts between individuals (*Manigault* v. *Springs,* 199 U. S. 473; *Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548; *Calhoun* v. *Massie,* 253 U. S. 170; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *Semler* v. *Dental Examiners,* 294 U. S. 608; *Midland Co.* v. *K. C. Power Co.,* 300 U. S. 109; *Indiana ex rel. Anderson* v. *Brand,* 303 U. S. 95; *Sliosberg* v. *New York Life Ins. Co.,* 244 N. Y. 482, certiorari denied *sub nom. New York Life Ins. Co.* v. *Sliosberg,* 275 U. S. 526; *Matter of People* [*Tit. & Mtge. Guar. Co.*] 264 N. Y. 69; *Stephenson* v. *Binford,* 287 U. S. 251).

The principle is particularly well stated by THACHER, J., in *Twentieth Century Associates* v. *Waldman* (*supra*, p. 580) as follows: " The principle is firmly established today that all contracts are subject to the police power of the State, and, when emergency arises and the public welfare requires modification of private contractual obligations in the public interest, the question is not whether ' legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end * * *.' " Actually, the 1945 Commercial Rent Law only " freezes and stabilizes rents " as of January 24, 1945, the effective date of the act. The landlord is not required to give up any lawful benefits that he acquired prior to January 24, 1945. The establishment of March 1, 1943, as a base date for rent control was merely the starting point for determining in the first instance only what is to be deemed a fair or, as the statute terms it, " Emergency rent " (§ 2, subd. [e]). (*Block* v. *Hirsch*, 256 U. S. 135; *Marcus Brown Co.* v. *Feldman*, 256 U. S. 170; *Levy Leasing Co.* v. *Siegel*, 258 U. S. 242; *Kimmelman* v. *Tenenbaum*, 182 Misc. 558.) The remedy prohibits unjust and unreasonable rents and provides the formula for the ascertainment of same during the emergency.

The 1945 Commercial Rent Law (L. 1945, ch. 3, as amd. by L. 1945, ch. 315) does not, as contended, deprive the landlord of his property without due process of law (*Transportation Co.* v. *Chicago*, 99 U. S. 635; *Bowles* v. *Willingham*, 321 U. S. 503); and actually, the act is not confiscatory. Section 4 thereof gives the landlord a complete remedy from individual hardship, either by arbitration or by a statutory proceeding in the Supreme Court, a concession not to be found under the Federal Rent Control Regulation, which has been found not to be confiscatory under the Federal due process clause (U. S. Const., 5th Amendt.).

The 1945 Commercial Rent Law does not, as contended, deny to the landlord equal protection of the laws. (*Whitney* v. *California*, 274 U. S. 357; *Middleton* v. *Texas Power & Light Co.*, 249 U. S. 152; *Sage Stores Co.* v. *Kansas*, 323 U. S. 32; *Northwestern Laundry* v. *Des Moines*, 239 U. S. 486; *Szold* v. *Outlet Embroidery Supply Co.*, 274 N. Y. 271.) The contention that commercial rent control is a Federal, rather than a State, matter is untenable. That the control of commercial rent is fundamentally a matter of local concern has been recognized judicially (*Bowles* v. *Willingham*, *supra*), as well as by the Federal Congress (see Hearings on S. No. 2176, 78th Congress, 2d Sess.).

Finally, the contention of plaintiffs-respondents that the 1945 Commercial Rent Law operates as a burden on interstate commerce is also without merit. It is well settled that the commerce clause of the Federal Constitution does not *ipso facto* bar a sovereign State from adopting regulatory and protective measures of a reasonable character in the interest of the health, safety, morals and welfare of its people merely because interstate commerce may be indirectly or incidentally affected thereby (*U. S.* v. *Underwriters Assn.,* 322 U. S. 533; *Parker* v. *Brown,* 317 U. S. 341; *Carter* v. *Virginia,* 321 U. S. 131; *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202; *People* v. *Rueffer,* 279 N. Y. 389; *O'Kane* v. *State of New York,* 283 N. Y. 439; *Matter of Banque de France* v. *Supreme Court,* 287 N. Y. 483). Bearing in mind the salutary wartime purposes sought to be served by the enactment of the 1945 act, the legislative intent to affect leases executed prior to the effective date of the statute, even if some individual landlords thereby suffered hardships, is justified by the admonition of the Supreme Court of the United States in *Bowles* v. *Willingham* (321 U. S. 503, 519, *supra*), where in upholding the Federal residential rent control regulations, it was said: " A nation which can demand the lives of its men and women in the waging of that war is under no constitutional necessity of providing a system of price control on the domestic front which will assure each landlord a ' fair return ' on his property." When men and women are laying down their lives that this nation will live, it must be regarded as the bounden duty of each State to aid in and supplement the national effort to curb inflation on the home front and the commercial and production front, to the end that when minds are diverted to war by the terrifying acts of gangster warmongers abroad, our citizens will not be left defenseless prey to the exactions of unscrupulous profiteers at home. This law is a rule of general application to all in the class affected and some righteous landlords may suffer. As pointed out above, within the provisions of the statute a method now exists for the alleviation of certain exceptional instances. If there be any for which the relief provided is inadequate, recourse may be had to further legislation.

We are of the opinion for the reasons stated that section 7 of the Commercial Rent Control Act (L. 1945, ch. 3, as amd. by L. 1945, ch. 315) is a valid exercise of the police power of the State, and does not violate section 10 of article I of the Constitution of the United States.

The judgments should be reversed and the complaints dismissed on the merits, with $30 costs, without prejudice to such

remedies, if any, provided by the statute as plaintiffs-respondents may be advised.

SHIENTAG, J. (concurring). I concur. (1) I agree that the Commercial Rent Law applies to pre-existing leases and was intended to and does have a retroactive effect. (2) So construed it has been held to be constitutional by the Court of Appeals in *Twentieth Century Associates* v. *Waldman* (294 N. Y. 571, 580). As THACHER, J., said in that case: " The principle is firmly established today that all contracts are subject to the police power of the State, and, when emergency arises and the public welfare requires modification of private contractual obligations in the public interest, the question is not whether ' legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end ' (*Home Bldg. & L. Assn.* v. *Blaisdell*, 290 U. S. 398, 438; *Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69, 83; *East New York Sav. Bank* v. *Hahn*, 293 N. Y. 622).''

(3) No prejudicial error was committed by the court below, in rejecting evidence offered by the landlord tending to question the existence of an emergency and the reasonableness of the legislation enacted to meet it.

Generally speaking, one who challenges the constitutionality of a statute will be permitted to offer proof designed to show that it was arbitrary or confiscatory and without any substantial basis in fact. The action of the Legislature is subject to judicial scrutiny in order to determine whether it has exceeded the limits of its power. '' The legislature cannot preclude that scrutiny and determination by any declaration or legislative finding. Legislative declaration or finding is necessarily subject to independent judicial review upon the facts and the law by courts of competent jurisdiction to the end that the Constitution as the supreme law of the land may be maintained.'' (*St. Joseph Stockyards Co.* v. *U. S.*, 298 U. S. 38, 51–52.)

Where there is reasonable ground for difference of opinion the courts will not interfere. Courts are not concerned with the accuracy of legislative findings or with the wisdom of the policy pursued but solely with the question whether the findings lack any reasonable support so as to stamp them as arbitrary and capricious. In other words the judicial function is limited to deciding whether the legislative determination is without rational basis. '' The court does not sit as a board of revision to substitute its judgment for that of the legislature '' (*St.*

*Joseph Stockyards Co.* v. *U. S.*, 298 U. S. 38, 51). To say that no evidence will be received tending to show that the findings and determination of the Legislature are arbitrary or capricious, and without any rational basis, would be to make the Legislature the final judge of the validity of its exercise of power, a status not conferred upon legislative bodies under our constitutional form of government.

Here, however, it is clear that no prejudicial error was committed in rejecting the evidence tendered. The basis of the emergency statute was an exhaustive investigation and report by a joint legislative committee. Even if the landlords' offer of proof had been fully substantiated, it would not have affected the result. Considerable testimony on the subject of the existence of a rent emergency for commercial space had been taken by the joint legislative committee on the strength of which the Legislature enacted the Commercial Rent Law. The most that could be said of the landlords' offer of proof was that it would have created a conflict of testimony concerning the findings, or some of them, of the legislative committee or indicated that the action taken by the Legislature was debatable or even perhaps unwise. In such a situation the judicial province finds no place.

The judgments below should be reversed and the complaints dismissed on the merits.

HAMMER, J., votes for reversal in opinion; EDER, J., concurs in result; SHIENTAG, J., concurs in opinion.

Judgments reversed, etc.