91 E. B'WAY CORP., Landlord, *v.* PIPPO TOY CO. INC., Tenant.

Municipal Court of the City of New York, Borough of Manhattan, October 27, 1945.

*Milton Lerner* for landlord.

*Joseph Levine* for tenant.

WAHL, J. The landlord brings this summary proceeding to dispossess the tenant for failure to pay rent for the months of August and September, 1945, at the monthly rent of $270.83 due under the provisions of a written lease dated May 17, 1945, but executed by the parties on August 9, 1945. The term of the lease is for two years, ten months, to commence on the first day of July, 1945, and to end on the 30th day of April, 1948, at an annual rental of $3,250, payable in equal monthly payments. The premises in question are concededly commercial space; however, they were not used or occupied for commercial purposes on March 1, 1943, nor was the tenant here in possession of the commercial space on January 24, 1945. As a matter of fact, the entire building, until recently, had been vacant for many years. On August 9, 1945, the landlord served upon the tenant a notice containing the statement that the " emergency rent " for the commercial space occupied by the tenant was $270.83 monthly, the rent reserved under the terms of the lease. The tenant concedes that it has not paid this amount, either for August or September; nevertheless it contends, by way of denial and defense, that the landlord is not entitled to maintain these proceedings as it, the landlord, has failed to prove to the satisfaction of the court not alone that the rent charged is not greater than the " emergency rent " for such commercial space, as required by section 6 of chapter 3 of the Laws of 1945 (as amd. by L. 1945, ch. 315), but also that any " emergency rent " is due. Nothing in the written lease nor in the oral testi-

mony discloses how the rent reserved in the lease entered into between the parties was determined. The landlord contends that the written lease with its stipulated rental price determines the "emergency rent" as that is all that is required by subdivision (e) of section 2 of chapter 3 of the Laws of 1945 in fixing "the reasonable rent * * * by agreement", where the commercial space was not used or occupied for commercial purposes on March 1, 1943, or the present tenant was not in possession of the commercial space on January 24, 1945.

Success or failure of the landlord's petition depends upon the interpretation that the court gives to subdivision (e) of section 2 of chapter 3 of the Laws of 1945, which reads as follows:

"(e) 'Emergency rent.' The rent reserved or payable under any lease, agreement, or tenancy of commercial space in force on March first, nineteen hundred forty-three, plus fifteen per centum of such rent; *provided that if the commercial space was not used or occupied on such date for commercial purposes, the emergency rent shall be the reasonable rent therefor as of such date, plus fifteen per centum thereof, to be fixed by agreement, by arbitration, or by the supreme court upon the basis of the rent charged on such date for the most nearly comparable commercial space in the same building or other satisfactory evidence."* (Italics supplied.)

A construction and interpretation of this particular subdivision is made necessary because the legislative intent is not clearly shown as to how the "emergency rent" for commercial space not used or occupied for commercial purposes on March 1, 1943, is to be determined. That there is an ambiguity apparent in this subdivision, not alone to the landlord here and its counsel but also to other members of the bar, all of long experience and recognized standing in the landlord and tenant and real property phases of the law, may be seen in the article entitled "Commercial Rent Ceiling Act" by Irving Mariash, Esq., in New York County Lawyers Association Bar Bulletin, Vol. 2, March, 1945, pages 9 and 14, and the articles of Albert W. Fribourg, Esq., in the daily newspaper, *The New York Sun,* of April 6, 1945, and August 31, 1945. It is the latter part of this subdivision, italicized above, which causes the landlord to argue with great force, and, perhaps, with some justification, that there are three methods, each exclusive of the others, to fix the "emergency rent" in such cases. One, "by agreement"; two, "by arbitration"; and, three, "by the Supreme Court upon a comparability basis or other satisfactory evidence". Therefore, it argues, the "emergency rent" may be fixed solely by

the agreement of the parties without having any other basis for the agreement than the reasonable rent of the commercial space, which is what was determined by the written lease executed by the parties to this proceeding.

However, much as I feel that the landlord has been placed in a difficult situation due to circumstances beyond its control or making, I must reject that construction and adopt the one to which I am led by established rules for the construction and interpretation of statutes. " Courts are required to seek the intent from the language used or, if there be ambiguity, obscurity or doubt, to give that construction which furthers the object, spirit and purpose of the statute (*People* v. *Kaye,* 212 N. Y. 407; *Tomkins* v. *Hunter,* 149 N. Y. 117)." (*Kuperschmid* v. *Globe Brief Case Corp.,* 185 Misc. 748, 752.)

Under these principles of statutory construction and interpretation, there is a rule that " Where general words appear at the end of a sentence and following several possible antecedents, they usually refer to, and modify, the whole sentence and not merely the last preceding antecedent." (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 254, and cases cited thereunder; see, also, *Tyrrell* v. *The Mayor,* 159 N. Y. 239, 243.) According to this well-established rule, the clause " upon the basis ", etc., modifies all the antecedents subsequent to the clause of condition which begins the sentence forming the latter part of the subdivision in question. It is my opinion that no agreement can be made privately between the parties to a contract or lease for the rental of commercial space not used or occupied for commercial purposes on March 1, 1943, and be enforcible under the statute unless it sets forth a rent which represents the reasonable rent therefor as of March 1, 1943, determined upon the basis of the rent charged on such date for the most nearly comparable commercial space in the same building or other satisfactory evidence. How this determination by the parties of what constitutes the " reasonable rent " on the " emergency rent day " is to be made evident to the court in cases where it may be in question is not a matter for me to decide here as nothing at all on that point had been shown by the landlord on the trial. However, while the terms of subdivision (e) of section 2 do not require any statements to be contained in the agreement as are required in the agreement provided for in section 4 of chapter 315 of the Laws of 1945, proper practice, both from a sound business viewpoint and as an evidentiary matter, would lead one to conclude that the agreement should be drawn separately from the lease agreement; and,

also, it should contain a statement of the facts upon which the parties to the agreement based their determination of the " reasonable rent " as of the " emergency rent day ". Modern standard form leases are designed to deal with, by means of contract methods, the complexities of modern landlord and tenant law; and, with their present numerous and copious clauses and covenants, they should not be made more cumbrous by the addition of such matters as transient as this emergency legislation, except by way of reference or incorporation.

That this construction is in consonance with and gives effect to the intent and primary purpose of the Legislature in enacting this emergency legislation may be seen from a reading of the entire act and the decisions rendered since its enactment. " It is clear that this statute and other statutes, both Federal and State, were parts of a comprehensive scheme of legislation remedial of inflation in which this statute acted through the medium of controlled agreements for commercial rents, *no matter when made.* It was in part retroactive in that rents were frozen as of a date prior to the effective date of the statute. *But the real evil which the enactment remedied by preventing collection of rents beyond the amounts fixed as of the freeze date was that of inflation. In this respect the statute was prospective.*" (Italics supplied.) (*Kuperschmid* v. *Globe Brief Case Corp.,* 185 Misc. 748, 755, *supra.*) Not only has this statute been held to be prospective but also retroactive in its operation. (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571; *Kuperschmid* v. *Globe Brief Case Corp., supra*). It would be anomalous, indeed, if a landlord who had premises to let and which had been regularly used for commercial purposes for many years would be subjected to and limited by the provisions of this emergency legislation in the letting of his own property while the landlord of premises which had been vacant on March 1, 1943, or never used or occupied for commercial purposes could exact from tenants in desperate need of commercial space whatever he thought to be a " reasonable rent ". If such were the intent of the Legislature, where, then, is the protection from inflation for which the emergency legislation was purposely enacted, and where is the legislative aid to parties denied the normal processes of bargaining due to circumstances beyond their control?

The landlord insists that the rental reserved in the lease agreement is, *ipso facto,* sufficient to justify the conclusion that the rent is the " reasonable rent " required by the statute. The Appellate Term, Second Department, in the case of *Flo-Ru-Na,*

*Inc.*, v. *Zimmerman* (185 Misc. 759, 761) holds that " The lease between the parties, with its stipulated rental, is not an agree- ment fixing an emergency rent within the meaning of the statute."

The landlord contends that it is entitled to a final order as, otherwise, much time might elapse before the reasonable rent can be determined in another forum and that the tenant, like the Arabs, in the meantime will fold its tent and silently steal away, and that this departure will occasion a pecuniary loss. This may be true. But this court has no alternative. The Com- mercial Rent Law, though not perfect, still must be respected. (*Blitzkrieg Amuse. Corp.* v. *Rubenstein Bros. Drinks*, 184 Misc. 975, 978.)

The question as to undue hardships suffered by landlords of newly constructed or renovated commercial space buildings is one for legislative consideration and not one for judicial cog- nizance. It may be said, however, in respect to those landlords and landlords of the same class as the present landlord, that they are not without remedy, for once the " emergency rent " has been established pursuant to the provisions of subdivision (e) of section 2 of chapter 3 of the Laws of 1945, judicial deter- mination of a " reasonable rent " is available to the landlord in every case. This procedure is reasonable and appropriate to meet the demands of the serious situation for which the " emergency " legislation was enacted, notwithstanding the hardships which might occur to individual landlords. (*Twenti- eth Century Associates* v. *Waldman*, 294 N. Y. 571, *supra*.)

The establishment of the " emergency rent " pursuant to subdivision (e) of section 2 being a condition precedent to the assertion of rights by the landlord against the tenant in a sum- mary proceeding for nonpayment of rent (*Cronson* v. *Fink*, 184 Misc. 723), and the landlord here having failed to sustain the burden of proof imposed upon it by section 6, that " the rent charged is not greater than the emergency rent for such com- mercial space " (*Flo-Ru-Na, Inc.*, v. *Zimmerman*, 185 Misc. 759, *supra*) final order is therefore made in favor of the tenant, dismissing landlord's petition, without prejudice to the institu- tion of new proceedings, if and when the " emergency rent " for the space herein mentioned has been fixed pursuant to the provi- sions of subdivision (e) of section 2 and there is a default, after proper notice given and the required demand made, in the pay- ment of the " emergency rent " for the months in question.