140 WEST 69TH STREET CORPORATION, Landlord, *v.* JOHN SIMIS et al., Tenants.

Municipal Court of the City of New York, Borough of Manhattan, December 31, 1945.

*David Greenberg* and *Max Segal* for landlord.

*Alexander Padowitz* for tenants.

WATSON, J. The landlord seeks to recover possession of the premises described in the petition for tenants' nonpayment of rent for the months of November and December, 1945, each in the amount of $240.33 and for arrears of rent in the amount of $600, pursuant to a written lease executed on August 6, 1940, for a term of ten years, commencing October 1, 1940, and ending September 30, 1950, at graduated rentals.

Originally, the annual rent reserved in the lease was: $1,500 from October 1, 1940, to September 30, 1943; $1,800 from October 1, 1943, to September 30, 1945; $2,200 from October 1, 1945, to September 30, 1947; $2,400 from October 1, 1947, to September 30, 1950. Subsequently, the rental clause of the lease was modified to read: " Commencing August 1st, 1943 up to September 30th, 1943, the rental reserved in this lease will be at the rate of $182. per month. From October 1st, 1943 to September 30th, 1945, the rental reserved in this lease will be at the rate of $207. per month. From October 1st, 1945 up to September 30th, 1947, the rental reserved in this lease will be at the rate of $240.33 per month. From October 1st, 1947 up to September 30th, 1950 the rental reserved in this lease will be at the rate of $257. per month. This will include electricity as an additional service without a separate charge. However, if the tenant keeps the store open between the hours of 4:00 A.M. and 6:00 A.M. on weekdays and/or 4:00 A.M. on Sundays to 6:00 P.M. on Mondays, the monthly rental herein reserved shall be increased by $7.25 commencing from the time the store is so kept open.''

This proceeding involves premises used for business purposes and falls within the provisions of chapter 314 of the Laws of 1945, known as the Business Rent Law, effective March 28, 1945.

The tenants' main defenses are (a) that the rent demanded is **unjust,** unreasonable and oppressive insofar as it exceeds the

sum of $143.75 per month which under their interpretation of the statute is the monthly emergency rent, and (b) that the landlord is barred from recovering the arrears of rent because of an oral executed agreement reducing the rent to the amount paid each month over the period during which the landlord claims the arrears accrued.

The tenants compute the emergency rent of $143.75 in this manner: each month from October, 1943, to September, 1945, they paid rent of $125 instead of $150, the monthly rent reserved under the original term of the lease for this period; that this lesser amount of $125 accepted by the landlord over that period of time fixed the rental value of the premises on June 1, 1944, the rent control date, and this sum plus 15% thereof, or $18.75, making a total of $143.75, establishes the emergency rent for the space. They disregard the modified rental clause of the lease which provides for a rental of $207 per month for that two-year period, and contend that this rental embraces a charge of $57 monthly for electricity which is to be treated separately from the actual rent charged for the space. The modification clause, after setting forth the revised annual rental, clearly indicates that these rentals " will include electricity as an additional service without a separate charge ".

Rent is a term which is peculiarly applicable to income to be derived only from real estate, and is a certain profit issuing out of lands and tenements.

Whether all payments which a tenant is bound to make under the terms of a lease is a part of the rent depends upon the contract of the parties, which is the lease. The language used in the instant proceeding reveals an intention on the part of the parties to treat the charge for electricity as part of the rent. The consideration reserved in this lease did not lose its essential character from the circumstance that electricity was furnished by the landlord in connection with and incidental to the tenancy, and included in the fixed specified monthly payment. The term " rent " must be taken in its usual and ordinary sense, which is, as implying a fixed sum to be paid at certain times for the use of property, and it requires no argument or citation of authorities to determine that the charge for electricity is part of the rent.

Since the enactment of these emergency rent control statutes of 1945, there has been considerable discussion and diversity of interpretations of the term " emergency rent ", defined in the statutes, as it relates to graduated rentals contained in existing leases. One school of opinion proclaims that the

statutes have discarded graduated rentals in such leases and limited the tenant's rent liability, during the emergency, to the rent reserved and payable in the lease on the " control " dates plus 15% of that amount. The other concludes that the laws were framed in a manner to preserve upward scales of rent in leases in force on the control dates.

The Business Rent Law (L. 1945, ch. 314) defines " emergency rent " in subdivision (c) of section 2 in this language: " The rent reserved or payable under any lease, agreement or tenancy of business space in force on June first, nineteen hundred forty-four, plus fifteen per centum of such rent * * *." It is also declared in section 1 of the law, by way of preamble, " It is hereby found * * * as a matter of legislative determination, that for the duration of such emergency, the establishment of a maximum rent for office and retail store and other business space at a level of fifteen per centum above rents charged on June first, nineteen hundred forty-four or at a level otherwise determined as hereinafter provided, will curb the evils arising from such emergency and accomplish the purposes hereof." This language in section 1 seems to be the basis of the conflict of opinions concerning the definition of " emergency rent " found in subdivision (c) of section 2 of the Law.

It seems to me that the language used in subdivision (c) of section 2 presents no ambiguity in the definition there given to emergency rent. It does not say that the emergency rent is based on the amount payable on June 1, 1944, but states definitely that it is based on " The rent *reserved* or payable *under any lease* * * * *in force on June first, nineteen hundred forty-four* " (italics mine). If the Legislature had intended to outlaw graduated rental clauses in leases in force on the " control " date, it would have been easy to employ language similar to that used in section 4 of Office of Price Administration Rent Regulation for Housing in the New York City Defense-Rental Area (8 Fed. Reg. 13914, 13915) in which maximum rent is defined as the rent paid for housing accommodations on the maximum rent date.

It is fair to assume that in framing these statutes the Legislature must have had in mind that graduated rentals in leases in force on the " control " dates should not be disturbed, for the language in subdivision (c) of section 2 defined " emergency rent " as " The rent *reserved* under any lease * * * in force on June first, nineteen hundred forty-four " (italics supplied). A contrary view would emasculate the plain language

of the statute and result in unjustness to the landlord and undue enrichment of the tenant. I hold, therefore, that the landlord is entitled to rent for the months of November and December, 1945, in the sums stated in the petition (see *Ronaho Corp.* v. *Morse,* 186 Misc. 334).

The defense of an executed oral modification of the rental terms to the extent of the amount of arrears of rent is not established by the evidence. Tenants requested a reduction of the rent but there is no proof of the landlord's consent thereto. Tenants' payment and landlord's acceptance of a sum less than the rent reserved in the lease without a showing that the landlord agreed to reduce the rent and that the lesser amount was accepted by the landlord in discharge of the tenants' liability for the whole rent, is ineffective. (*Pape* v. *Rudolph Brothers, Inc.,* 257 App. Div. 1032, affd. 282 N. Y. 692.)

The landlord is entitled to a final order awarding to it delivery of possession of the premises described in the petition for tenants' nonpayment of rent and arrears of rent stated in the petition.