AUSWIN REALTY CORPORATION, Appellant, *v.* DOROTHY KIRSCHBAUM, Respondent.

Second Department, February 4, 1946.

*George Foster, Jr.* and *Arthur H. Priest* for appellant.

*Morton Greenfield* for respondent.

NOLAN, J. On July 12, 1940, the parties to this proceeding entered into a lease, under seal, which provided for a term of five years from August 1, 1940, to July 31, 1945. The rent reserved was payable in monthly installments in advance on the first day of each month, at the rate of $125 per month during the first year, and at increasing rates during each succeeding year until the last year of the term, during which the monthly rent was $190. The lease further provided that: " The failure of the Landlord to insist upon a strict performance of any of the terms, conditions and covenants herein, shall not be deemed a waiver of any rights or remedies that the Landlord may have, and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained."

On June 1, 1944, there was payable as rent for the month of June, according to the terms of the lease, the sum of $180. However, prior to that date, and in 1942, the parties *orally* agreed that the landlord would accept $125 per month " for the duration." There was no consideration for this agreement. Thereafter rent was paid in the amount of $125 per month, and on June 4, 1944, the tenant paid and the landlord accepted $125 as rent for the premises for the month of June. This arrangement continued until March, 1945. Prior to March 1st, the tenant was notified by the landlord that all future rent would be at the rate reserved in the lease ($190). The tenant failed to pay the rent demanded, and this proceeding was commenced.

It was the landlord's contention that pursuant to the provisions of the Business Rent Law applicable to business space (L. 1945, ch. 314), the emergency rent collectible was 15% above the rent provided to be paid by the lease on June 1, 1944, but not to exceed the rent reserved in the lease ($190 per month for March and April, 1945). The tenant contended that the landlord could charge and collect no more than 15% above the rent actually paid for the month of June, 1944 ($125).

On this state of facts the Municipal Court held that since the rent paid on the " freeze date " was $125, and that amount was accepted by the landlord, such sum was, by the action of the parties, the rental reserved and payable on June 1, 1944, since the oral agreement of the parties had been executed as to the rental for that month. The court determined the rent due to be $287.50 ($125 per month plus 15%), and directed judgment accordingly. The Appellate Term has agreed with this construction of the statute.

The statute provides (§ 6) that in any proceeding brought to recover possession of business space for or on account of a default in payment of rent: " To the extent that the rent charged is in excess of the emergency rent, or such greater rent as may have been fixed pursuant to section four of this act, the tenant may interpose the defense that the rent charged is unjust, unreasonable and oppressive and, if such defense be interposed, the rent charged, to the extent of such excess, shall be uncollectible." And that, " any rent which exceeds the emergency rent shall be presumed to be unjust, unreasonable, and oppressive." (L. 1914, ch. 314, § 3.)

Emergency rent is defined, insofar as the definition contained in the statute is pertinent, as follows (§ 2, subd. [c]) : " The rent reserved or payable under any lease, agreement or tenancy of business space in force on June first, nineteen hundred forty-four, plus fifteen per centum of such rent * * *."

If the effect of the oral agreement of the parties was to modify the lease so as to provide for payment of reduced rent, and if such modification continued in force until revoked, the determination made by the courts below is correct, since under such circumstances, the lease or agreement " in force on June first, nineteen hundred forty-four " provided for payment of rent at the rate of $125 per month.

The oral agreement that rent should be paid and accepted at the reduced rate, however, had no such effect. Insofar as it remained unexecuted, it was absolutely void and inoperative. Under the provisions of the lease, a sum certain became due

and payable, as rent, on the first day of each month during the term. By accepting a lesser sum, the landlord forgave the debt to the extent of the balance due. The lease remained in force, and the agreement therein contained to pay rent in stated amounts was unaffected, insofar as it remained executory, by the voluntary acceptance of lesser amounts by the landlord. (*McKenzie* v. *Harrison,* 120 N. Y. 260.) On June 1, 1944, therefore, the only lease or agreement in force was the written lease, which provided for payment of rent in the sum of $180 on that date, and there was no tenancy except as the result of this agreement. On that date there had been no waiver of the terms of the lease, or forgiveness of the debt created thereby, insofar as they provided for the payment of $180 as rent for the month of June. The landlord could have waived full performance, and thereafter did so on June 4th, when the lesser amount was accepted, but on June 1st it was not obliged to do so, and could have insisted on performance in accordance with the terms of the lease then in force. The conclusion would seem to follow that the landlord was entitled to the rent demanded in its petition.

The tenant urges, however, that we must seek the legislative intent, in the report of the joint legislative committee which preceded the adoption of this and a companion statute dealing with stabilization of commercial rents, and which recommended legislation specifying that for the duration of the emergency, any rent exceeding by more than 15% the *rent paid* on March 1, 1943, should be deemed unjust, unreasonable and oppressive. We are required, however, to determine the legislative intent from the language used in the act. It is true that in section 1 of the statute, which declares the public emergency and states the purpose of the act, the Legislature declared that it found, "that for the duration of such emergency, the establishment of a maximum rent for office and retail store and other business space at a level of fifteen per centum above rents charged on June first, Nineteen hundred forty-four or at a level otherwise determined as hereinafter provided, will curb the evils arising from such emergency and will accomplish the purposes hereof."

If the words "rents charged" had stood alone, there would be room for a construction that the Legislature intended to limit the emergency rent collectible to the rent paid, plus 15%. The intent of the lawmakers is made clear, however, by the implementing sections of the law, in which the intent to establish a maximum rent at a level of "rents charged" plus 15% is carried into effect by providing for "emergency rent" which

is defined as " The rent reserved or payable under any lease * * *." (L. 1945, ch. 314, § 2, subd. [c].) This language requires no construction. If the words " rents charged " mean, as the tenant contends, rent paid, there is an apparent inconsistency in the provisions of the law. In the interpretation of legislative enactments, inconsistency in the same statute is thought to be contrary to the intent of the lawmakers. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 98.) Effect must be given, if practicable, to all of the language employed, and inconsistent expressions are to be harmonized, if possible, to reach the real intent of the Legislature. (*Matter of New York and Brooklyn Bridge,* 72 N. Y. 527.) There is no difficulty in harmonizing the provisions of the statute under consideration, if the provisions of section 2 are deemed explanatory of the meaning of the Legislature in using in section 1, the words " rents charged ". We conclude that the two expressions have the same meaning, viz., rent provided to be paid and collectible " under any lease, agreement or tenancy * * *."

We are aided in our conclusion by consideration of the result which would follow the construction urged by the tenant as, for instance, if the landlord, as an accommodation to the tenant, had permitted him to occupy the premises rent free for the month of June, 1944. As has been previously noted, the landlord had the legal right to enforce the terms of his lease on June 1st of that year. That right had not been surrendered on that date, nor was there any waiver thereafter of the right to insist on full performance of the contract to the extent that it remained executory. The construction of the statute urged by the tenant would deprive the landlord of that right to an extent which, in our opinion, was not contemplated by the Legislature. " An interpretation of an act should be avoided which would injuriously affect the rights of others, and that sense should be attached to its provisions which will harmonize its objects with the preservation and enjoyment of all existing rights." (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 146, p. 224.)

No matter how the statute may be interpreted, the order of the court below must be modified. If the tenant's contention is correct, the landlord was, nevertheless, entitled to rent in the sum of $190 for the month of March, 1945, since the emergency legislation did not become effective until March 28th in that year. We conclude, however, that the landlord was entitled to the full rental provided by the lease for both months.

The order of the Appellate Term should be modified on the

law by striking from the ordering paragraph everything following the words " and the same is, hereby " and inserting in place thereof a provision that the final order of the Municipal Court be modified so as to provide that the rent due to the appellant is the sum of $380, and that judgment is directed in its favor accordingly. As so modified, the order of the Appellate Term should be affirmed, with costs in all courts to the appellant.

LEWIS, P. J., CARSWELL, JOHNSTON and ADEL, JJ., concur.

Order of the Appellate Term modified on the law by striking from the ordering paragraph everything following the words " and the same is, hereby " and inserting in place thereof a provision that the final order of the Municipal Court be modified so as to provide that the rent due to the appellant is the sum of $380, and that judgment is directed in its favor accordingly. As so modified, the order of the Appellate Term is unanimously affirmed, with costs in all courts to appellant.