86 NEAR SECOND AVENUE CORPORATION, Plaintiff, *v.* BERNHARD FENNEKOHL, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, March 13, 1946.

*Edward Elman* and *Theodore Ornstein* for plaintiff.

*Julia Perles* for defendant.

WAHL, J. In this action for rent, wherein summary judg- ment is sought by both plaintiff and defendant by motion and cross motion, respectively, the plaintiff-landlord seeks to recover from the defendant-tenant the sum of $287.50 as the " emergency rent " of store premises for the month of October, 1945. The plaintiff bases its demand for this " emergency rent " upon the provisions of a lease originally executed in August, 1940, between the then landlord, plaintiff's predecessor in title, E. Ornstein, Inc., and the tenant herein. This lease was for a five-year term commencing October 1, 1940, and expiring September 30, 1945, with an annual rental of $2,400 for the first year, payable in $200 monthly installments; $2,700 for the second year, payable in $225 monthly installments, and $3,000 annually for the remainder of the term, payable in monthly installments of $250. This monthly payment of $250 was the rent reserved or payable under the terms of the original lease on June 1, 1944, the date on which rents for business space were " frozen " by chapter 314 of the Laws of 1945; and it is this sum plus 15% that the landlord claims is the " emergency rent " for the business space in question. The tenant, however, resists the payment of this sum and contends that the " emergency rent " is the sum of $175, the rent actually paid on June 1, 1944, plus 15%, or a total of $201.25.

It appears that the tenant here had, in 1942, commenced an action for property damage against his original lessor, E.

Ornstein, Inc., but had stipulated to discontinue that action as part of a compromise agreement, made December 5, 1942, wherein his then landlord, 215-17 East 86th St., Inc., (which had succeeded E. Ornstein, Inc., as landlord) agreed to a modification of the lease covenant pertaining to the amount and payment of rent. By the terms of this modification agreement, it was agreed that the rent provided for under the terms of the lease was to be reduced to $175 per month, payable monthly in advance, for the duration of the war, and upon cessation of the war, the tenant was to pay the full rent provided for in the lease, all other terms, covenants and conditions of the lease to remain in full force and effect. This reduced rental was the amount actually paid by the tenant on June 1, 1944, and was so paid by him until the expiration of the lease, to wit, September 30, 1945. In April, 1945, pursuant to the provisions of chapter 314 of the Laws of 1945, the plaintiff-landlord herein served upon the tenant a notice that the '' emergency rent '' of the premises occupied by the tenant was $287.50 per month, and on or after October 1, 1945, demanded that sum from the tenant, payment of which was refused. The plaintiff contends that the December, 1942, agreement did not contemplate or effect any change or reduction of the rent reserved in the lease, but, instead, merely provided for a concession or allowance, by way of a lesser rental for a period of time, in adjustment and settlement of a pending litigation. In answer to this, the tenant argues that '' The rent reserved or payable under any lease, agreement or tenancy of business space *in force* on June first, nineteen forty-four,'' (L. 1945, ch. 314, § 2, subd. [c]) (italics supplied) was the rent set forth in the modification agreement of December, 1942, which was still in force on June 1, 1944; and that sum, plus 15%, is the '' emergency rent '' and is the only sum which he can pay by law. This issue leaves no questions of fact in the litigation but only a question of law to be determined on this motion as to what is the '' emergency rent '' for the occupancy of the premises in question.

The tenant here is clearly a statutory tenant, the lease under which he entered having expired, and the landlord has not sought to renew the prior lease nor has there been any renewal of the prior lease by act of the parties or operation of law. Such a tenancy is one of statutory creation and protection, and the occupancy under such a tenancy is governed by legislative intention, as expressed in the statutes creating them and the cases interpreting those statutes. The occupancy of a statutory tenant is not governed by the intentions of the parties to the

tenancy, contained and evidenced in their prior dealings and contracts. The tenant stands on his statutory rights, and these become the measure of his term and his liability. (*Stern* v. *Equitable Trust Co.*, 238 N. Y. 267.)

This fact distinguishes this case from those decided by my colleague, Mr. Justice JOHN M. LEWIS, in which there also was in issue the question of modification of lease rental payments on the " freeze date ". In those cases, Judge LEWIS decided that the rental reserved and payable by the terms of the leases *still in effect* when the nonpayment summary proceedings were instituted was the rent recoverable by the landlord, despite the fact that the tenants in each case had paid a lesser rent on the " freeze " date, June 1, 1944, pursuant to a formal written modification agreement. The *ratio decidendi* of Judge LEWIS's decisions was that in enacting the emergency rent legislation of 1945, *the Legislature did not intend to vary the rent reserved in a contract made sometime before the emergency arose, viz., March 1, 1943, or June 1, 1944, and still in effect.* (*Empire State, Inc.,* v. *Terminal Barber Shops,* and *New York Towers, Inc.,* v. *Lillian Sloane, Inc.,* Municipal Court of the City of New York, Borough of Manhattan, 9th Dist., Dec. 10, 1945. See, also, *Ronaho Corp.* v. *Morse,* 186 Misc. 334. See, also, *140 W. 69th St. Corp.* v. *Simis,* 186 Misc. 342.)

In the instant case, the original lease and the compromise agreement of December, 1942, are no longer in effect, having expired by limitation. Therefore, the sole and exclusive method of determining the amount of " emergency rent " to be paid for the statutory tenancy of this business space is to be found in the provisions of chapter 314 of the Laws of 1945. Subdivision (c) of section 2 of that Law, as far as its wording is pertinent to the question here, defines " emergency rent " as follows: " The rent reserved or payable under any lease, agreement or tenancy of business space in force on June first, nineteen hundred forty-four, plus fifteen per centum of such rent; * * * ." Section 3, in part, states that: " From and after the effective date of this act and during the continuance of the emergency * * * any rent which exceeds the emergency rent shall be presumed to be unjust, unreasonable and oppressive." Section 7 provides that: " In any action to recover rent for business space accruing during the period of the emergency, it shall be a defense that such rent is unjust, unreasonable and oppressive if such rent is in excess of the emergency rent * * * , and to the extent of such excess the same shall be uncollectible." Section 12 sets forth that any waiver of any of

the provisions of the act shall be unenforcible and void. These are the provisions of the law which control the rental and occupancy of the premises in question, and govern the parties to such rental and occupancy, not alone the parties to this action but any parties succeeding to their interests.

Thus, what the intentions of the parties were when they made the December, 1942, agreement can be of no interest to the court other than as an aid in determining whether or not that agreement effected an enforcible modification of the original lease provisions as to the amount of rent reserved and payable on June 1, 1944. In making that determination, the court has neither the intent nor the desire to rewrite the agreement so as to extend the period of payment of the reduced rental beyond the time originally contemplated by the parties, a possible effect advanced by the plaintiff in support of its argument that no modification of the lease provisions was contemplated or intended by the parties. Harsh and unjust though an adverse ruling may be to the plaintiff here, the court cannot ignore the plain provisions of the statute and legislate judicially to reach a conclusion more in consonance with equity and justice. This emergency legislation and the purpose for which it was enacted must be considered by the court in the light of the legislative intention as set forth in the statutory provisions, and in instances of individual and unusual hardship recourse must be sought either in the legislative forum or in other provisions of the statute. (*91 E. B'way Corp.* v. *Pippo Toy Co.,* 185 Misc. 779, 784.)

That the agreement executed by the plaintiff's predecessor in title and the tenant on December 5, 1942, effected a legally enforcible modification of the original lease provisions as to the amount of rent payable for these store premises can readily be seen from a reading of the following clauses of the agreement: " Whereas it is the desire of the parties to adjust the said action *and to modify the said lease* [italics supplied];

" Now, THEREFORE, it is mutually agreed as follows: 1. That the rent, provided for under the lease shall be reduced to $175 per month payable on the first day of each month in advance.

" 2. That the said reduction shall remain in full force and effect during the duration of the war and upon the cessation of the war the tenant shall pay the full rent provided for in the aforesaid lease in the manner and upon the terms set forth therein.

" 3. That all of the other terms, covenants and conditions of the aforesaid lease shall remain in full force and effect."

This agreement was duly executed in writing, signed by the parties and properly acknowledged by them. Pursuant to its provisions, a monthly rental of $175 was paid by the tenant to the landlord until August, 1944, when the plaintiff here took title to the building and from that date to September, 1945, the tenant offered and the plaintiff accepted the sum of $175 per month as rent for the leased premises. Thus, both the words and the actions of the parties to the 1942 agreement show an intention to treat that agreement as expressly modifying the original lease in respect to the rent reserved and payable under it, with all other terms, covenants and conditions of the lease to remain in full force and effect. The question of consideration, advanced by both plaintiff and defendant, is not material here, as consideration is not required to make a formal written modification of a lease legally enforcible. (Real Property Law, § 279, subd. 1; Personal Property Law, § 33, subd. 2.) The agreement was legally binding on both parties, and either one could enforce it against the other. Therefore, the " rent reserved or payable under the lease *in force* on " June 1, 1944, was the sum of $175 and this was the " rent charged " and the " rent paid " on that date. Accordingly, it became the base of the emergency rent, and the maximum rent recoverable by this plaintiff on and after October 1, 1945, was that sum plus 15%.

The plaintiff-landlord advances the case of *Auswin Realty Corp.* v. *Kirschbaum* (270 App. Div. 334), as resolving the question in its favor. The ruling on these motions had been delayed with the consent of the parties pending the determination of that case, but after reading the reported decision and giving it careful consideration, I am unable to agree with the plaintiff and, instead, I believe that decision sustains the defendant's position. In the *Auswin* case (*supra*), the question also arose as to what constituted the " emergency rent " of the business space in question, the tenant contending that the rent actually paid on June 1, 1944, pursuant to an oral agreement with the landlord to accept a lesser sum of $125 as rent on that date rather than the $180 rent reserved under the lease, controlled as to the base of the emergency rent. The Appellate Division rejected this contention, saying that the only lease or agreement " *in force* " (italics supplied) on June 1, 1944, was the written lease providing for the payment of $180 rent and the oral agreement to accept the lesser rent and the acceptance thereof did not have the effect of modifying the lease which remained in force as to the executory features of paying rent in the stated amounts. Significantly, however, Justice NOLAN

had this to say at the beginning of the court's decision (p. 336):
" If the effect of the oral agreement of the parties was to modify
the lease so as to provide for payment of reduced rent, and if
such modification continued in force until revoked, the deter-
mination of the courts below is correct, since under such cir-
cumstances, the lease or agreement ' in force on June first, nine-
teen hundred forty-four ' provided for payment of rent at the
rate of $125 per month.''

Here, the agreement was in writing and used express words
of modification of the lease provision so as to provide for pay-
ment of reduced rent. It was not such a collateral agreement
as could be construed to be a stipulation of settlement, estab-
lishing a definite amount due defendant from plaintiff and
allowing him to take installment payments from the rent
recoverable by the landlord when it came due. Nor was it such
an agreement as my associate, Mr. Justice DI PIRRO, had before
him in *18 Realty Corp.* v. *Paley* (185 Misc. 232). Rather, the
facts here are quite similar to those in *Adams* v. *Riker Operating
Co.* (N. Y. L. J., Aug. 17, 1945, p. 310, col. 3) which was an
action brought in Supreme Court, New York County, to recover
the balance of rent due for the months of March and April,
1945, of $75 per month, the difference between the sum of $325
per month claimed by the landlord and the sum of $250 per
month already paid for those months by the tenant. In that
case, the original lease was executed in January, 1936, for a
ten-year term ending February, 1946, at an annual rental of
$3,900, payable in monthly installments of $325. In February,
1943, a written modification agreement was made between the
parties, pursuant to which the rent was reduced to $3,000 per
annum, payable in monthly installments of $250, from March 1,
1943, to February 28, 1945. The tenant paid the sum of $250
on June 1, 1944, the " rent freeze date ", in accordance with
the modification agreement. The abatement in the modification
agreement having expired by limitation, the landlord demanded
the full sum of $325 for the months of March and April, 1945,
under the lease provisions then in effect for the payment of an
annual rent of $3,900 for the last year of the term. The tenant
contended that the rent due the landlord was the sum paid as
rent on June 1, 1944, plus 15%. Special Term denied plaintiff's
motion for summary judgment and for judgment on the plead-
ings, citing *Twentieth Century Associates* v. *Waldman* (294
N. Y. 571). The Appellate Division of the First Department
affirmed without opinion, on January 18, 1946 (270 App. Div.
755), the ruling of Special Term. While the Appellate Division

wrote no opinion, it is my belief, from the similarity of facts and situations, that both Appellate Divisions, First and Second Departments, are in accord in holding that a written modification of a lease, providing for a lesser rental than that received in the original lease, and in force· on the " emergency rent date ", fixes the base for the emergency rent.

In reaching the conclusion herein, I have not been unmindful of the fact that the plaintiff here was not a party to the modification agreement which will so materially affect the present and future use and enjoyment of its property, or to the property damage action, the settlement of which was the motivation for the reduction in rent.  At first blush, it would appear that the statutory protection given the tenant herein will unduly confer benefits upon him, far beyond what ordinarily would be considered as the legislative intention, and certainly far beyond, in the sense of time, what the parties to this modification originally contemplated.  Although it is probable that this tenant will receive more than was bargained for in settlement of his property damage action, by reason of the reduced rent being frozen and fixed as the base of the emergency rent, it cannot be said that this probability was beyond the contemplation· of· the parties to the agreement, for they themselves provided for an uncertain duration of the reduced payments, viz., the cessation of the war, the determination of which is still a moot question.  The plaintiff, as grantee of the leased real property in question, is charged with knowledge of the lease and the modification agreement and took the· grant subject to tenant's lease.  The intent of the Legislature, as evidenced in the language used in the statute in question, is clear as to what is deemed to be the " emergency rent " recoverable by *any* landlord for occupancy of *any* business space and " This language [§ 2, subd. (c)] requires no construction." (*Auswin Realty Corp.* v. *Kirschbaum,* 270 App. Div. 334, 338, *supra.*) Rents were frozen and stabilized as of the effective date of the emergency legislation (March 28, 1945) in the manner provided therein (§ 11).  The establishment of June 1, 1944, as a base date for business space rent control was merely the starting point for determining in the first instance only what is to be deemed a fair rent (*Kuperschmid* v. *Globe Brief Case Corp.,* 185 Misc. 748, 756).  " This law is a rule of general application to all in the class affected and some righteous landlords may suffer. As pointed out above, within the provisions of the statute a method now exists for the alleviation of certain exceptional instances.  If· there be any for which the relief ·provided is

inadequate, recourse may be had to further legislation.'' (*Kuperschmid* case, *supra,* p. 757.) '' Certainly, there was nothing arbitrary or unreasonable in the remedy which the Legislature applied, providing, as it did, for arbitration or judicial determination of fair and reasonable rentals in all cases. Under the provisions of section 4 of the act the establishment of ' emergency rent ' at a level of 15% above rents charged on March 1, 1943 [June 1, 1944, in L. 1945, ch. 314], could be reviewed either upon application to the Supreme Court or upon submission to arbitration. Judicial determination of a reasonable rent was thus made available to the landlord in every case:'' (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571, 581, *supra.*) I believe that this answers effectively any consideration of the result occurring as in this case, and also, as would occur if the premises were occupied rent free on the '' emergency rent date ''.

What it does not answer, however, is the unjust and unreasonable burden placed on a landlord of having to resort to expensive and otherwise burdensome arbitration or Supreme Court proceedings in order to establish a '' reasonable rent '', and in some instances, the '' emergency rent '', in these exceptional cases. It has been a common experience in the Municipal Court of late to dismiss actions and proceedings because the court was restricted in granting relief indubitably due the landlord, although the court had all the parties and most of the facts before it. This can only lead to a circuity of actions which has long been obnoxious to the law. This restriction cannot be because of jurisdictional limitations, for the Municipal Court had jurisdiction to determine '' reasonable rents '' under the emergency legislation of the 1920's. (*Hall Realty Co.* v. *Moos,* 200 App. Div. 66; *Marion* v. *Weiser,* 119 Misc. 412.) Can it be because it is thought that the complexities of the problems are beyond the powers of a Municipal Court justice to resolve for a proper judicial determination? If so, such a position is untenable for no matter what their predecessors were, the justices who comprise the Municipal Court Bench of today, many of them of long and meritorious service upon the Bench, others with great and varied experience in the Legislature of the State of New York and its various committees, and all with long and honorable careers at the Bar, are eminently qualified to resolve any question that may arise in these matters, and are as well qualified as arbitrators and justices of the Supreme Court. The restriction cannot be accounted for on the basis that the Municipal Court has neither the opportunity nor facili-

ties for the disposition of this type of proceeding; it is common knowledge that the calendars of the Municipal Court provide the simplest, most expeditious and most inexpensive procedure for the disposition of cases, far more so than arbitration or Supreme Court proceedings. If the restriction is made on the theory that these problems on matters of " emergency rent " or " reasonable rent " are not to be entrusted to any " inferior court ", what then becomes of all the recent talk and discourse on the " step-up " of judicial officers by which they will progress from the lower to the higher courts? Where or how else are the " inferior court " justices to show their capabilities unless they are given the opportunity to hear and try questions of the same nature as are presented in the higher courts, restricted only in the sense of amount or parties? I see no reason, either in logic or in practice, for any restriction such as is contained in both emergency rent laws by which these questions are limited to arbitration or Supreme Court proceedings. *Distinctio sine differentia.* It offends one's sense of justice and equity to have to turn out parties properly before a court, because of a senseless restriction, and relegate them, because of the restriction, to another forum.

Upon the foregoing and all the motion papers, the motion of plaintiff for summary judgment is granted to the extent of allowing plaintiff partial summary judgment in the sum of $201.25, the action severed as to the balance, and plaintiff's motion is denied as to the balance. Defendant's cross motion for summary judgment is granted to the extent of dismissing plaintiff's complaint as to the balance claimed in the severed action.