Arthur S. Hirsch, J.
Petitioners, shareholder-lessees of the respondent company (hereinafter referred to as the company or as Contello), a limited-profit co-operative operating a Mitchell-Lama housing project pursuant to article II of the Private Housing Finance Law (PHFL), instituted this article 78 proceeding to compel the company, among other things, to turn over the full price of the sale ’ ’ of petitioners ’ stock.
In other words, petitioners are contesting the company’s asserted legal obligation to impose a surcharge upon petitioners’ carrying charges for the years 1970, 1971, and for that part of the year 1972 during which petitioners occupied the rented premises, for failure to comply with the rules and regulations governing such housing project which were promulgated by the New York City Housing and Development Administration (hereinafter HDA). Since the company has in the interim proceeded with the sale of petitioners’ stock with the approval of HDA, that portion of the petition seeking to compel the company to proceed with the sale becomes moot.
The company counterclaims for judgment against petitioners to the extent of the amount of 50% of the petitioners’ carrying charges for the years 1970, 1971 and up to August 31, 1972 for the carrying charges for July and August, 1972 and for other additional specified charges due under their leases.
HDA, added as a party respondent herein upon the inter-pleader defense pleaded by the company, has cross-claimed against the company that the latter be required to pay ever to HDA an amount equal to 50% of the maximum surcharge due and owing from the petitioners (under PHFL, § 31, subd. 4) for failure to authorize the Finance Administration of the City *262 of New York to verify petitioners’ income affidavits by comparison with their income tax reports.
Under article 2 of the PHFL, municipalities are permitted to grant certain financial benefits, including tax exemptions and mortgage loans, to such housing companies as the respondent company herein, to construct and provide adequate housing for those unable to pay rents or carrying charges imposed in ordinary unaided private enterprises (§ 11).
Occupancy in such development is available only to persons with specified limited income (PHFL, § 31, subd. 2, par. [a]). The statute provides that occupants whose “ income exceeds the maximum prescribed by law shall pay a rental surcharge in accordance with a schedule of surcharges to be promulgated by the company with the approval of the * * * supervising agency ”. (PHFL, § 31, subd. 3; emphasis supplied.) Subdivision 3 was amended June 25,1971 (L. 1971, eh. 778) to provide that such surcharge shall not exceed 50%. Chapter 778 further provides in section 3: “ This act * shall apply to surcharges payable pursuant to the provisions of section thirty-one of the private housing finance law on the basis of income received by persons * * * in occupancy * * * after January first, nineteen hundred seventy.”
The supervising agency has the exclusive power to promulgate “ rules and regulations for carriyng into effect the provisions of this article ”. (PHFL, § 32, subd. 3.) In New York City the Housing and Development Administration (HDA) is the designated supervising agency for publicly aided housing (New York City Charter, § 1803). Among the rules and regulations of the HDA respecting tenants’ continued eligibility to pay only reduced rentals, one regulation provides that “ on April 15 of each year * * * the housing company shall mail to each housing tenant a request for information as to the financial status of his family group based on the preceding calendar year. (The information requested shall be of the same nature as required for initial occupancy.) ” (HDA, art. Ill, § 3[a].)
Another regulation fixes the maximum rental surcharge to be charged tenants for exceeding stated earning limitations at 50% for the year beginning January 1, 1970 (HDA, art. HI, § 2; see L. 1971, ch. 778, § 3). While HDA had at one time proposed to amend said section 2 of article III of the rules and regulations to limit the maximum rental surcharge to 25% (see proposals published in the City Register on January 29, 1971, at page 408 et seq. and on February 16,1971, at page 736 et seq.), apparently to comply with the then existing State law (see L. *263 1968, eh. 879), HDA never officially promulgated the proposed change.
In April, 1971 HDA sent the company a form affidavit to he completed by their tenants, requesting by April 30, 197Í certain income information for the calendar year 1970 and an authorization permitting the Finance Administration of the City of New York to verify to HDA the taxable income of such tenant as reflected on the tenant’s 1970 New York City income tax return.
An accompanying instruction sheet explained, for the tenants, the affidavit and the maximum surcharge which would be applicable in the event the tenant failed to file a completely filled-in income affidavit, including a failure to complete the authorization to obtain the information from the City of New York Finance Administration. Apparently, the company submitted form affidavits to its tenants which did not contain the authorization to obtain income tax information from the Finance Administration.
On January 4, 1971, HDA advised the company that there were maximum surcharges against all tenant co-operators of such housing development for having returned their income affidavits without the required authorization regarding verification with their 1970 income tax returns.
With respect to the 1971 New York City income tax return, petitioners concede that they struck out the pertinent authorization contained in the income affidavits they filed with the company in 1972.
In May, 1972 petitioners notified the company that they would vacate their apartments on or before September 1, 1972 and simultaneously tendered their stock certificates. On June 14, 1972 the company advised petitioners that the rules and regulations of HDA require petitioners to submit affidavits of income for 1970, 1971, and an estimated affidavit of income for 1972. The company also requested petitioners to execute the income tax authorization at the bottom of each affidavit. The company further advised petitioners that unless said affidavits were returned properly executed, the company was instructed by HDA to hold in escrow from petitioners’ equity 50% of petitioners’ yearly carrying charges “ until such time as your surcharge if any is determined by them.” The petitioners failed to submit the said affidavits.
Another HDA regulation specifically provides that HDA ‘ ‘ will not approve the sale or transfer of the apartment of a *264 tenant-cooperator who has failed or refused to pay any surcharges then due and payable.”
It is the court’s opinion that to confirm petitioners’ claim of right to continued occupancy at a reduced rental cost, HDA had the right to verify petitioners’ claimed income by comparison with the income reported in their New York City income tax returns (see Matter of Gunty [Division of Housing and Community Renewal], N. Y. L. J., July 24, 1972, p. 10, col. 6; Strycher’s Bay Apts. v. Walsh, 67 Misc 2d 134), and that petitioners ’ failure to deliver such authorizations, all as hereinabove recited and, in particular, following the request made on June 14, 1972, warranted the imposition of the maximum surcharges. Under the rules and regulations of HDA, the statutory supervising agency under subdivision 3 of section 31 of PHFL, it is the court’s further opinion that the company lacked the power, by continuing to accept rent in the interim, to effect a waiver of HDA’s right to obtain petitioners’ said income tax inspection authorizations.
Petition denied. The cross claim of HDA against the company, respondent Centello, is granted, requiring the company to pay over to HDA an amount equal to 50% of the maximum surcharge due and owing from the petitioners for their failure to authorize the Finance Administrator of the City of New York for verification of their income affidavits by comparison with the income reported in their New York City income tax returns. The company on its counterclaim against petitioners, is granted judgment against petitioners for the amount of 50% of the carrying charges for 1970, 1971 and up to August 31, 1972, and for the carrying charges for the months of July and August 1972 and for the additional specified charges due under the lease.
In the event petitioners’ income, as reported in their New York city income tax returns, was in and of itself insufficient in amount to warrant imposition of the full 50% surcharge for the respective periods herein involved, as provided by the rules and regulations of HDA, they are granted leave to apply for a corresponding reduction of the amounts of the money judgménts herein (1) upon submitting supporting proof of income, (2) by giving respondents written authorization permitting the Finance Administration of the City of' New York to verify to HDA petitioners ’ taxable income as reflected on petitioners’ income tax returns for the stated periods,