Shanley N. Egeth, J.
This is an action by a Mitchell-Lama housing company to recover damages for breach of lease against a tenant who vacated the leased premises prior to the expiration of the lease term. It, and four companion actions* in which the lessor was represented by the same managing agent, raised identical issues. These actions came on before this court for inquest, and after a joint trial, decision was reserved.
Each of these cases involved common questions of law and fact. This court then raised, sua sponte, a number of legal questions as to plaintiff’s entitlement to all of the relief sought.
In addition to the usual questions of entitlement to recompense for loss of base rent until the time of rerenting, and for other appropriate damages sustained by the plaintiffs due to the breach of lease, in each of these cases the plaintiff is seeking to charge the tenants retroactive monthly rent surcharges back to January, 1970 or January, 1971, at the highest rent paid during the term of the lease. In each case plaintiff has also refused to credit rent security held on deposit by the landlord against the moneys claimed to be due.
In each of these cases the plaintiffs offered proof that the landlord, Mitchell-Lama housing sponsor, made demands upon the tenant to file an income questionnaire in the form required by the Housing and Development Administration, which supervises Mitchell-Lama housing projects in New York City. In all cases, despite notice to the tenants that they might be liable for a 50% rent increase per month surcharge for failure to file the requested income form, each tenant receiving such notice failed to file the requested document prior to moving out in breach of lease before the expiration of the lease term. No attempt was made to collect any authorized surcharge monthly as part of the rent actually received during each of the months of occupancy prior to the tenant’s breach of lease. In all cases, the plaintiff requested and accepted only the specified monthly lease rent due throughout the tenant’s occupancy; but now, following the tenant’s breach of lease, the plaintiff seeks to recover the 50% per month surcharge retroactively to the first of the year in which each tenant failed to comply with the demand to file the income questionnaire. In this case, and in three of the four companion cases, the tenant’s rent was raised during the lease term with the approval of the Housing and Development *190 Administration, as authorized in the lease, and plaintiff seeks to collect its increased rent for all months including those prior to the date of said increase. In the instant case pláintiff seeks a total retroactive surcharge of $1,869.09; in the others the surcharge sought ranges from $878.90 to $1,614.40.
Plaintiffs contend that the surcharge claimed is authorized and mandated by the provisions of article 2 of the Private Housing Finance Law (L. 1961, ch. 803, as amd.), and by section 3 (subds. [a] and [b]) of article III of the promulgated Rules and Regulations of the Housing and Redevelopment Board of the City of New York (now known as the Housing and Development Administration).
Section 31 (subd. 2, par. [a]) of the Private Housing Finance Law fixes an income limitation of six or seven times the aggregate annual income for occupants of Mitchell-Lama housing projects. Subdivision 3 of section 31 of the Private Housing Finance Law provides that if the aggregate annual income of a tenant shall increase beyond 25% over the statutory income limit, such tenant shall be-subject to removal from the housing accommodations unless the sponsor-landlord (with the approval of the Commissioner or supervising agency), “ shall determine that removal would cause hardship ”. Such tenant then “ may be permitted to remain in occupancy until such income exceeds the maximum prescribed by law by more than fifty per centum ’ ’. Subdivision 3 of section 31 authorizes and delegates authority to the .supervising agency (Housing and Redevelopment Board [HRB], now HD A in N. Y. C.) from time to time, to make, amend and repeal rules and regulations required to effectuate the means and methods of compliance with the provisions of the statute.
In exercising this delegated authority, the agency promulgated its regulations. Section 3 of article III, entitled “ Surcharge Procedure,” reads in part as follows:
“(a) On April 15th of each year, during occupancy, the housing company shall mail to each housing tenant a request for information as to the financial status of his family group, based on the preceding calendar year. The information requested shall be of the same nature as required for initial occupancy. # * *
“(d) In the event that a tenant shall fail to file the required information by May 1st of each year, the income of such tenant shall be presumed- to have exceeded the maximum allowed by law, and written notice shall thereupon be given to such tenant that the maximum surcharge will be imposed against him on *191 July 1st, unless remitted with the approval of the Board.” (Emphasis added.)
This court recognizes the equity of the public policy expressed in the Private Housing Finance Law which restricts the availability of this much needed, partially subsidized housing to persons within designated income limits. It is also clear that, in order not to deprive eligible persons of housing to which they are entitled, appropriate means are necessary to prevent ineligible persons from occupying such housing units. The legislative plan contained in the statutory provisions, authorizing a rent surcharge of up to a maximum of 50% of rent, appears to be an appropriate equitable means of preventing the acute hardship of sudden eviction, especially under existing economic conditions in which tenants5 incomes may vary greatly from year to year. It also seems clear that authority had to be delegated to a governmental agency to create rules for effectuating and implementing this public policy, and that such rules were required to provide some means of procuring essential financial information as a reasonable guideline for imposition of any surcharge.
This court questions the equity and efficacy of a presumption that any tenant who failed to file an income questionnaire had income so far in excess of the statutory limits as to become liable for maximum statutory surcharge. This court believes that such a rule does not truly accomplish the appropriate legislative intention. Additionally, in many cases, its implementation will create circumstances of gross inequity and injustice without procuring the purpose of getting the required information. In many instances, such as those now before this court, implementation of such a rule will not accomplish the original purpose, but rather could create a horrendous and oppressive penalty for nonfiling, even though such penalty does not exceed constitutional limits. It might be more effective and just to promulgate a rule making the failure to file a substantial violation of the lease, and to mandate the immediate commencement of a summary proceeding for possession and termination of the lease. Such proceeding would result in a rapid hearing at which the questionnaire could be filed or the tenancy terminated.
It is, however, not for a court to choose the most desirable means for implementing statutory intent. That function properly belongs within the scope of legislative or administrative responsibility. (Matter of Rathscheck, 300 N. Y. 346; Matter *192 of Palmer v. Spaulding, 299 N. Y. 368 and Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634.)
The presently existing HDA Buies providing for income confirmation and surcharge procedure, have been judicially upheld as a valid delegation and exercise of legislative authority. They have also been judicially determined not to exceed constitutional limits or to constitute an unconstitutional fine or forfeiture. (Council of Limited-Profit Mut. Housing Cos. v. Walsh, Sup. Ct., N. Y. County, Index No. 2252/1972, Carney, J., affd. 41 A D 2d 703; Matter of Firestone v. Contello Housing Co., 72 Misc 2d 260 [1972]; Matter of Strycker’s Bay Apts. v. Walsh, 67 Misc 2d 134.)
Although this court is bound by the determination of the Appellate Division, First Department in the Council of Limited Profit case (supra) and generally approves of a surcharge procedure, the court believes nevertheless, in this case and in the companion cases, that plaintiff is not entitled to any of the moneys sought herein as surcharge, for the following reasons:
A. Initially, it should be absolutely clear that any surcharge to which a sponsor would be entitled must be based upon the base rent which is actually due in any given month. Where the rent has otherwise been increased during the period in question, the surcharge may not be computed retroactively for the full period on the basis of the highest rent during the surchargeable period. Plaintiff sought to do this in most of these cases. No surcharge may be computed upon the basis of the increased monthly rental until the first month for which the increased rental is collectible.
B. No surcharge may be collectible for any month prior to July 1 following the expiration of the calendar year for which the financial questionnaire is due.
In this case, and in the companion cases, the plaintiff seeks the surcharge increase for each of the months of occupancy from January 1 to July 1, following the expiration of the reportable calendar year. The HRB (now HDA) Rules and Regulations, authorizing the imposition of the surcharge for failure to file the income report, do not authorize the imposition of any such surcharge until July 1, or for any period prior thereto. The rule or regulation creating this extraordinary right is explicit and clear. It must be strictly construed in its application against any party to be financially charged thereunder. (Penoyar v. Kelsey, 150 N. Y. 77; Parker v. Hoefer, 2 N Y 2d 612, cert. den. 355 U. S. 833.) Any attempt to seek a monthly rent surcharge for the months from January to July *193 would be in derogation of the statutes and .regulations which have created the right to recover a rent surcharge, and therefore no such right or claim can be deemed to exist.
C. In this case and in all of the companion cases plaintiff made no demand upon the defendant for any surcharge of rent during any of the months of tenant occupancy from the authorized July 1 date to the date the tenant breached the lease and removed from possession. For each of these months plaintiff demanded, received and accepted the regular base rent which was due without any additional surcharge. Demand for the surchargeable addition was first made retroactively for this period after the tenant vacated possession of the leased premises. A landlord who demands and accepts payment from the tenant of a reduced rent is precluded from suing thereafter to recover the difference for those months for which he accepted the reduction. This doctrine is clearly enunciated on page 589 of the opinion of Mr. Justice Mundeb. in the case of Russo v. De Bella (220 N. Y. S. 2d 587 [1961]), which reads in part as follows: ‘ ‘ The law of this State applicable to those instances in which a landlord accepts rental in an amount less than that called for in an agreement of lease has been clearly established. Acceptance of rent in a lesser amount than that recited in a lease operates only as a forgiveness of the balance between the lesser amount accepted and that recited. At any time during the term of the lease the landlord may demand payment of the rent in the amount recited in the agreement for the executory or unexpired term of the lease. McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458, 8 L. R. A. 257; Auswin Realty Corporation v. Kirschbaum, 270 App. Div. 334, 59 N. Y. S. 2d 824; Liebeskind v. Moore Co., Sup., 84 N. Y. S. 850.”
D. Plaintiff in this and the other cases is also seeking the monthly surcharge, in addition to the base rent, for the period commencing from the time the defendant tenant vacated the premises prior to the expiration date of the lease until the premises were rerented to a new tenant. Although it is clear that the plaintiff landlord is entitled to damages of the cumulative base rent unpaid for this period of time, there can be no recovery of the surcharge addition to the rent for such period. Subdivision 3 of section 31 of the Private Housing Finance Law, which authorizes the imposition of the surcharge, specifically makes such surcharge applicable to “ Any person or family in occupancy whose income exceeds the maximum prescribed by law”. (Emphasis supplied.) The right to *194 recover the surcharge from a tenant is conditioned by the statute upon two conditions: (1) occupancy arid (2) and an income in excess of the statutory limit. Therefore, a tenant who is surchargeable thereunder no longer remains subject to surcharge after either of the conditions cease to exist. Once the tenant vacates the premises, even if in breach of the lease, such tenant no longer is subject to any further surcharge. The right to impose this charge expires upon the termination of the occupancy. The entire legislative rationale and the expressed statutory purpose require tenant occupancy, since the surcharge is a statutory device to permit continued occupancy by a tenant after the tenant’s income exceeds that statutory limit. If the tenant would not incur hardship by removal after exceeding statutory income limits, the statute mandates a termination of occupancy.
Upon the basis of the foregoing there is no part of plaintiff’s claim for damages based upon surcharge which is collectible from the tenant in this case, or in the companion cases.
The plaintiff acknowledges that no credit has been given to the defendant for rent security which is presently held on deposit by the landlord. Plaintiff argues that the lease specifically precludes any setoff of security against moneys due to the landlord, and that the landlord should accordingly receive a judgment for the full amount due. Plaintiff contends that the tenant should be required to commence a separate action to recover a return of such security deposit. Under the circumstances existing in these cases, plaintiff’s position is without merit. No useful purpose would be served thereby. To require a separate action between these parties for the dispositiori of the security deposit at a time when all other liabilities under the leasehold have matured and accrued, would only serve to encumber the litigants and courts with unnecessary litigation. In these cases, plaintiff has already claimed and proved all damages which may be recoverable due to the defendant’s breach of lease. Since plaintiff is holding funds (security deposit) belonging to the tenant, such sum should be set off and applied as a credit against money due to plaintiff from the defendant. If there were other outstanding claims under this leasehold which were to mature at a future date, or which were not yet liquidated, it would then be appropriate to enforce the lease restriction against setoff, so as to thereby afford the landlord protection against any future contingent needs. This court construes the meaning of the lease clause barring setoff of security, accordingly.
*195 In this case, plaintiff proves a loss of apartment rental of $218.94 per month for three months ($656.82); loss of three months’ garage rental at $5.30 per month ($15,90); and prorated damages for painting, in the sum of $75.46; totaling $748.18. No claims for .surcharge have been sustained. Defendants are to be credited with a setoff of $190.18 for rent security and, therefore, judgment is awarded to plaintiff against the defendants in the net sum of $557.33, plus interest as demanded in the complaint and costs.

 Brandford House v. Furman Rentz & Mignonne Rentz, 15111/72; Branford House v. Baxter, 16263/72; Evergreen Gardens v. Mitchell, 121134/72; Evergreen Gardens v. Vargas, 15001/72.