PRIVATE HOUSING FINANCE LAW, § 33.
Shelter rents as defined in § 33 of the Private Housing Finance Law include all sums of rent paid by the tenant to the landlord as well as fees collected by the landlord for the use of space within the housing project. The rents of both commercial and residential tenants are included in shelter rent and such housing projects which are UDC subsidiaries are absolutely entitled to the limited real property tax exemption provided in § 33 (1) (c) of the Private Housing Finance Law.
HON. JOSEPH GOLDMAN Acting Commissioner Division of Housing and Community Renewal
HON. EDWIN COHEN President Urban Development Corporation
This is in response to the joint request from your agencies on the calculation of local real property taxes and the extent of local real property tax exemptions for limited profit housing companies which are, or are not, Urban Development Corporation subsidiaries, as the case may be.
The limited tax exemption for such housing projects which are not UDC subsidiaries is found in paragraph (a) of subdivision 1 of section 33 of the Private Housing Finance Law, which provides as follows:
 "§ 33. Tax Exemptions.-1. (a) Upon the consent of the local legislative body of any municipality in which a project is or is to be located, the real property in a project shall be exempt from local and municipal taxes, other than assessments for local improvements, to the extent of all or part of the value of the property included in such project which represents an increase over the assessed valuation of the real property, both land and improvements, acquired for the project at the time of its acquisition by the limited-profit housing company, provided however, that the real property in a project acquired for purposes of rehabilitation shall be exempt to the extent of all or part of the value of the property included in such project, and further provided that the amount of such taxes to be paid shall not be less than ten per centum of the annual shelter rent or carrying charges of such project . . . Shelter rent shall mean the total rents received from the occupants of a project less the cost of providing to the occupants electricity, gas, heat and other utilities. The tax exemption shall operate and continue so long as the mortgage loans of the company are outstanding, but in no event for a period of more than thirty years, commencing in each instance from the date on which the benefits of such exemption first become available and effective."
On the other hand, the exemption for such projects which are UDC subsidiaries (see § 12 of UDC Act for definition of subsidiary) is found in paragraph (c) of such subdivision 1 of section 33 of the PHFL, and reads as follows:
 "(c) Notwithstanding the provisions of paragraphs (a) and (b) of this subdivision, the real property of a state urban development corporation project acquired, owned, constructed, managed or operated by a company incorporated pursuant to the not-for-profit corporation law and this article shall be entitled to all the benefits provided by section four hundred twenty-two of the real property tax law. The real property of a state urban development corporation project, other than a state urban development corporation project acquired, owned, constructed, managed or operated by a company incorporated pursuant to the not-for-profit corporation law and this article, shall be exempt from all local and municipal taxes, other than assessments for local improvements, to the extent of the value of the property included in such project as represents an increase over the assessed valuation of the real property, both land and improvements, acquired for the project on the date of its acquisition by the limited-profit housing company, provided that the amount of such taxes to be paid shall not be less than ten per centum of the annual shelter rent or carrying charges of such project, as defined in paragraph (a) hereof. The tax exemption shall operate and continue so long as the mortgage loans of such limited-profit housing company are outstanding, but in no event for a period of more than thirty years, commencing in each instance from the date when such limited-profit housing company first acquired such property."
The basic difference in the nature of these exemptions is that the UDC subsidiary exemption is absolute while the others covered by paragraph (a) are conditioned upon the approval of such limited exemptions by the local municipal legislative body.
In addition, the UDC Law itself deals with tax exemptions for the UDC and its subsidiaries. Section 22 of the UDC Act (§ 6272 of the Unconsolidated Laws) provides that:
 "§ 22. Exemption from taxation. — The exercise of the powers granted by this act will be in all respects for the benefit of the people of this state, for the increase of their commerce, welfare and prosperity, and for the improvement of their health and living conditions, and will constitute the performance of an essential governmental function and the corporation and its subsidiaries shall not be required to pay any taxes, other than assessments for local improvements, upon or in respect of a project or of any property or moneys of the corporation or any of its subsidiaries, levied by any municipality or political subdivision of the state, nor shall the corporation or its subsidiaries be required to pay state taxes of any kind, and the corporation, its subsidiaries, projects, property and moneys and, except for estate and gift taxes and taxes on transfers, any bonds or notes issued under the provisions of this act and the income therefrom, shall at all times be free from taxation of every kind by the state and by the municipalities and all other political subdivisions of the state."
Subdivision 3 of section 15 of the UDC Act (§ 6265 of the Unconsolidated Laws) further provides that:
 "§ 15. Special provisions relating to residential projects . . . (3) Notwithstanding any other provision of this act, projects of a subsidiary organized pursuant to articles two, four or eleven of the private housing finance law shall be exempt from real property taxes to the extent and in the manner provided by applicable law."
The problems which you cite have arisen in conflicting interpretations of these four statutes in four different areas relating to taxes and tax exemption. The first two of these questions deal with the method of calculating "shelter rents" as defined in section 33 to establish the minimum tax of ten percent of the "total rents" received from the occupants of the project.
In the past the Division of Housing and Community Renewal has taken the position that the tax liability for a project under section 33 should be calculated on ten percent of the total rents collected including that portion of the rent paid by each tenant and designated as "rent to pay taxes." UDC, on the other hand, has taken the position that this "rent to pay taxes" is an add-on to the rent for the specific purpose of paying the real property taxes for the project and should not be considered in determining "total rent."
An analysis of the statutes in question as well as the background information in the bill jackets at the time the laws were enacted indicates that the term "rent to pay taxes" has no statutory basis. Further, the tenant is not charged a sum specifically described as "rent to pay taxes," nor does the lease purport to make such tenants personally liable for the payment of taxes. Apparently, the term "rent to pay taxes" represents the internal accounting designation employed to distinguish that portion of the rent collected which is ultimately used to pay real property taxes.
I conclude, therefore, that in the absence of statutory direction or legislative intent to the contrary, the phrase "total rents" must mean exactly what it normally would mean, and includes the so-called "rent to pay taxes."
The second question again relates to the computation of shelter rents. Contained in most if not all of the projects are parking facilities, washing machines, clothes dryers and an assortment of vending machines. Up to the present time UDC has taken the position that the charges imposed by a project owner for use of these facilities do not constitute "rent" and therefore should not enter into the calculation of the shelter rent tax base. The DHCR treats these charges as rent and includes them in its computations.
The statutes formulate no specific definition of the term "rent" nor does the available legislative history on these statutes shed any light on the intent of the draftsmen. There are no cases interpreting this specific term as it is employed by the statute.
In a strict sense, the term "rent" is applicable only to compensation for the use of land and tenements corporeal, and is not generally applicable to compensate for the use of chattels. (See 76 Corpus Juris Secundum P1166, definition of the term "rent"; see also 140 West 69th St. Corp. v. Sinies, 186 Misc. 342, Municipal Ct., N.Y.C. [1945]; In Re Niagara Falls PowerCo. v. Water Power Central Comm., 237 App. Div. 216 [3d Dept., 1932].) Under this definition charges for rental of parking space as well as the charge paid by the owner of the machines for the privilege of locating them within the project would be considered rent. However, if the owner of the project is also the owner of the machines, the receipts therefrom would not be rents but would be either a service charge for the use of the machine or purchase price for the product sold in the machine.
I conclude, therefore, that income from the offering of parking space to a tenant or from the offering of space within the project for the installation of concessionaire's machines would be "rent" within the common law meaning thereof, and thereby includible as part of the shelter rent. Where the washers, dryers or vending machines are owned by the owner of the project and revenue to the owner is from the use of the machines, such revenue is not rent to be included in shelter rent.
The third and fourth questions which you present relate to the real property tax exemption afforded UDC projects by local governments. In the first of these two questions which relate to tax exemptions, you ask whether rents by commercial tenants who are part of the housing project should be included in "total rents" to become a part of the shelter rent or whether in fact commercial uses in such projects are entitled under the law to any limited tax exemptions at all.
Before considering the tax exemption question, it must be stated that such a commercial tenant is an "occupant" under the definition of shelter rent in section 33 in the same manner as a residential tenant. A limited profit housing company project by definition properly includes certain types of commercial tenants. Such tenants pay rent for the use of a portion of the project in the same manner as a residential tenant and are "occupants" of the project. Their rent should be included with the rents of residential tenants in determining "total rents" to establish the shelter rent tax base.
When the housing project is not a subsidiary of UDC the local governing body may refuse to grant the limited tax exemption afforded under section 33 of the PHFL, and, therefore, in such instances has some control over tax exemptions where commercial tenants are involved. But where the housing project is a subsidiary of UDC the limited exemption is absolute. The real property of a state urban development corporation housing project "shall be exempt" from local taxation to the extent provided by section 33 (1)(c). There is no discretion upon the part of a municipality to exclude portions of a project from the tax exemption set forth in the statute. Actually under section 22 of the UDC Act all properties of the UDC and its subsidiaries are granted local real property tax exemptions. It is only because of the qualification of that exemption for limited profit housing companies under section 15 of the UDC Act that the exemption is limited to a tax of ten percent of the shelter rent as set forth in section 33 of the PHFL.
I conclude, therefore, with respect to your third question that a commercial tenant in a housing project of a UDC subsidiary is an occupant of the project and his rent is to be included with the rents of residential tenants of the project in determining the shelter rent tax base for the project.
Your final inquiry relates to the tax exempt status of UDC projects under construction. As stated above, all UDC real property is subject to tax exemption by virtue of section 22 of the UDC Act, unless the real property is owned by a UDC limited profit housing company subsidiary, where a limited exemption is in order. (See § 15 [3] UDC Act, supra.)
It is my understanding that UDC itself normally acquires in its own name title to the lands being purchased for development of the project. Since the project at this point has not yet come into being so as to fall within the limitations of section 15 (3) of the UDC Act, the general exemption for UDC property granted in section 22 of the UDC Act would apply. At whatever point UDC conveys the property to its limited profit housing company subsidiary — whether it be before construction, during construction or after construction — the limited exemption of section 33 (1) (c) would then apply, for this section provides that the limited exemption commences "in each instance from the date when such limited profit housing company first acquired such property."
I conclude, therefore, with respect to your fourth inquiry, that when title to the property is in UDC itself the general exemption of section 22 applies and when title is in a subsidiary the limited exemption of section 15 (3) applies.
By way of summary then in response to your four inquiries, I conclude:
 1) That the language "total rents collected from the occupants" includes that portion of rent collected designated as "rent to pay taxes" and these sums should be included in the computation of shelter rents.
 2) That the term "rent" as used in section 33 (1) (a) is applicable only to those sums collected as compensation for the use of space. Therefore, rent includes those sums collected from tenants pursuant to their respective leases and fees from rentals for parking privileges. It also includes fees from a concessionaire for use of space within the project, but does not include sums collected as receipts from washing machines, clothes dryers or vending machines.
 3) That commercial tenants of UDC residential projects are to be considered occupants in determing shelter rent tax base for the project, and a municipality has no discretion to exclude premises occupied by commercial tenants in a UDC residential project from the limited exemption of section 33 (1) (c) of the PHFL.
 4) That in UDC residential projects the general tax exemption of section 22 of the UDC Act applies when title is in UDC itself and the limited exemption of section 33 (1) (c) of the PHFL applies when title is in a UDC subsidiary.