In the Matter of ROSTKACH REALTY CORPORATION, Petitioner. JOHN POLITI et al., Copartners Doing Business under the Name of ACME TEXTILE PRINTING Co., Respondents.

Supreme Court, Special Term, Kings County, March 30, 1949.

*George Langberg* for petitioner.

*Taft & Kaufman* for respondents.

BELDOCK, J. Petitioner moves under section 4 of the Commercial Rent Law (L. 1945, ch. 3, as amd.) for an order fixing the reasonable rental value, as of the date of the service of this petition, for the commercial space now occupied by respondents. By a cross motion respondents move to dismiss the petition on the ground that it is defective in that it does not comply with section 1 *et seq.* of the Commercial Rent Law.

It appears that on September 14, 1943, a written lease was entered into between the parties for a term of five years commencing on October 1, 1943, and ending September 30, 1948. Under the terms of said lease, respondents agreed to pay a rental of $3,000 for the first year, $3,300 for the second year and $3,600 for each of the remaining three years. Since the expiration of the term of this lease, respondents as statutory tenants have been paying the rental provided therein at the rate of $300 per month.

By this application petitioner seeks to increase the rental to $750 per month, based upon the contention that such amount is the reasonable rental value of the commercial space herein involved.

Petitioner's application is dated January 18, 1949, was served on January 21, 1949, and was made returnable in this court on February 8, 1949. Respondents' cross motion to dismiss the petition is dated January 31, 1949, a copy of which was served upon the attorney for the petitioner on February 1, 1949. About ten days after petitioner served its papers for the relief herein requested, its attorney caused to be sent to the respondents a notice dated January 31, 1949, indicating that commencing with February 1, 1948 (the year evidently being a typographical error), the emergency rental for the premises would be increased to the sum of $345 per month. Seemingly, this sum is arrived at by adding 15% to the rental of $300 now being paid by the respondents. Admittedly, no attempt was made by petitioner before service of the notice adverted to, to fix the emergency rent of these respondents.

It is the contention of the respondents that the petition is defective for the following reasons: (1) There is absent therefrom an allegation that the " emergency " rent was fixed under subdivision (e) of section 2; (2) it fails to allege whether or not the premises were occupied on March 1, 1943, the " freeze " date; and (3) as the " emergency " rent had not been fixed prior to the institution of this proceeding, the service of a notice subsequent thereto, attempting to fix the " emergency " rent, did not cure such defect.

Answering the cross motion, petitioner asserts that section 4 is independent of the other sections of the Commercial Rent Law dealing with stabilization of rents and that its application under section 4 is not based upon the " emergency " rent as provided in subdivision (e) of section 2.

A solution to this very interesting problem necessitates an analysis of the pertinent sections of the Commercial Rent Law. Section 1 declares in part: " It is hereby found by the legislature that for the duration of such emergency, the establishment of a maximum rent for commercial space at a level of fifteen per centum above rents charged on March first, nineteen hundred forty-three, or at a level otherwise determined as provided herein, will curb the evils arising from such emergency and will accomplish the purposes hereby sought to be achieved."

The above language is a clear legislative declaration that during the period of emergency, a ceiling of 15% above the rental charged on March 1, 1943, was to be established. The procedure for determining such ceiling or emergency rent is contained in subdivision (e) of section 2 and is as follows: If the space was rented for commercial use on March 1, 1943 (the " freeze " date), the emergency rent is established as the rent payable on that date plus 15%. If, however, such space was not used or occupied for commercial purposes on March 1, 1943, the emergency rent is arrived at by adding 15% to the reasonable rent for such space on March 1, 1943, based upon rents charged on that date for comparable space in the same building or other rental area, or by other satisfactory evidence. Such reasonable rent for commercial space not used or occupied on March 1, 1943, may be determined by agreement between the parties, by arbitration or by application to the Supreme Court.

The Commercial Rent Law, however, affords a procedure by means of which a landlord may have his rent fixed at a ceiling higher than that which is allowed by subdivision (e) of section 2. Such procedure is contained in section 4. Under that section, the landlord may have the rent fixed at a reasonable

rental based upon the fair rental value of the tenant's commercial space as of the date of application to the Supreme Court or submission to arbitration or by the making of a rent agreement with the tenant under certain specified conditions. The rental of the subject space under this section is to be arrived at by determining the rents required to produce a reasonable return on the entire building. A net annual return of 6% on the fair value of the entire property, including the land, plus 2% of principal for amortization of any mortgage thereon or 2% for depreciation of the fair value of the building not encumbered by a mortgage, is presumed to be a reasonable return.

Thus, subdivision (e) of section 2 and section 4 provide two entirely separate and distinct procedures. The former prescribes the method for fixing the maximum or ceiling rental during the emergency; the latter details the legislative plan by which, in some instances, the ceiling may be extended. The methods of fixation of rents are entirely different. One (§ 2) uses March 1, 1943, as a base, and where the premises are unoccupied on the " freeze " date, the reasonable rent is based upon comparability; the other (§ 4) fixes reasonable rent based upon fair value of the premises and the base date is the date when application is made to the court or the matter is submitted to arbitration.

In my view, therefore, there is no prohibition against the court's fixation of a reasonable rental value of the premises until and unless the emergency rent has been first fixed under subdivision (e) of section 2. Such a proscription is not set forth in section 4, nor is there a requirement that the emergency rent must be set forth in a petition based upon that section. Although the statute specifies in detail the items which the landlord must supply the tenant in a verified bill of particulars where a proceeding is brought under this section, no provision is made therein for the furnishing of a statement of the emergency rent or of the fixation thereof prior to the institution of such proceeding.

Nor does there appear to be any valid reason why such a condition as respondents attempt to interpose herein should be operative. Where a landlord finds that the emergency rent to which he may be entitled would not be sufficient, it would be a circuitous method to have him fix the emergency rent first and then immediately thereafter be compelled to make an application for the fixation of rent in excess of such emergency rent as established. Such a view of this subject was taken by Mr. Justice SCHREIBER in *Matter of Carter* (*Alfred Dunhill of London, Inc.*) (N. Y. L. J., April 21, 1948, p. 1477, col. 6).

Section 4 does not contain the limitation which respondents seek to invoke herein. The only limitation indicated is embodied in the opening sentence of the section and provides for the fixation of a reasonable rental in excess of the emergency rent " within the limitations specified by this section ". What these limitations are have been in part detailed above.

I cannot agree with respondents' contention that the language of section 4, particularly that part therein which provides that " As a condition precedent to being heard in any proceeding or arbitration, under this section, the tenant must pay to the landlord the emergency rent on each date when the rent is due under the terms of his lease, rental agreement or tenancy ", is indicative of legislative intent that the emergency rent must be first established before a proceeding under this section may be brought. In my opinion, the quoted portion does not act as a limitation on the *landlord's* right to bring such a proceeding. All this quoted portion means is that if the landlord has seen fit to take advantage of the right afforded in subdivision (e) of section 2 and has fixed the emergency rent, the tenant must pay such rent and cannot await the final outcome of the proceeding in which it is sought to fix the reasonable rental value of the commercial space in question. An interpretation such as respondents contend for would be forced and unnatural, and would make it impossible for a tenant to appear in a section 4 proceeding, if the landlord, for some reason best known to himself, has not fixed the emergency rent. Such construction of the statute would not be a reasonable one, and was clearly not the intent of the Legislature.

This proceeding not having been brought to fix the emergency rent under subdivision (e) of section 2, it is not required, as urged by respondents, that the petition contain an allegation that such space was occupied on March 1, 1943. Such an averment would be important in a proceeding brought to fix the emergency rent, for in a proceeding of that kind the application could not be made to a court to fix the emergency rent unless the premises were unused or unoccupied on March 1, 1943.

For the reasons advanced, the court need not determine at this time and in this proceeding whether the notice sent on January 31, 1949, is such an " accurate " statement as would fix the emergency rent, in compliance with subdivision (e) of section 2 and section 3. Respondents' contention that service of the notice on January 31, 1949, subsequent to the institution of these proceedings did not cure the defect in failing to allege the emerg-

ency rental, is likewise immaterial. In view of what has been said above, that too has no bearing on an application of this character, which is made under section 4.

*Empire Plexiglass Corp.* v. *Enterprise Industries* (191 Misc. 58), *91 E. B'way Corp.* v. *Pippo Toy Co.* (185 Misc. 779), and *Whiting* v. *Tower's Stores* (73 N. Y. S. 2d 334) cited by respondents in support of their contentions are not in point. The *Empire* case (*supra*) was an action to recover rent. It was there held that in such case the plaintiff must plead and prove the emergency rent and that he furnished a statement of such emergency rent under section 3. These allegations are conditions precedent to recovery under section 6. The failure to allege such conditions precedent constitutes a jurisdictional defect. The *91 E. B'way Corp.* case (*supra*) was a summary proceeding for nonpayment of rent. There too the petition was dismissed by reason of the failure to set forth the factual averments prescribed in section 6. The *Whiting* case (*supra*) was an action to recover rent for commercial space. Plaintiff's motion for summary judgment in that case was granted because plaintiff did not seek to recover more than the rental on the freeze date plus 15%.

This is not an action or a summary proceeding for the nonpayment of rent. It is a special proceeding regulated wholly by section 4. The rationale of the decisions in the cases cited is clear. Where the statute (§ 6) provides that certain facts must be set forth, the omission of those facts will render the action or proceeding defective. Here, as has already been indicated, the Legislature has not required that the emergency rent be fixed first or be set forth in a petition before a proceeding of this character may be maintained.

Accordingly, respondents' cross motion to dismiss the petition is denied, with leave to answer within ten days after service of a copy of the order to be entered hereon with notice of entry thereof. Petitioner's application is granted and the matter will be referred to an official referee to hear and determine after the service of an answer or after the time to answer has expired. Settle order on notice.